**KIM–STAN, INC., a Virginia corporation, Plaintiff,**

v.

**DEPARTMENT OF WASTE MANAGEMENT, et al., Defendants.**

**CA–89–00373–R.**

United States District Court, E.D. Virginia, Richmond Division.

March 6, 1990.

Jack E. McClard and Ann T. Burks, Hunton & Williams, Richmond, Va., for plaintiff.

Mary Sue Terry, Atty. Gen. of Virginia, R. Claire Guthrie, Deputy Atty. Gen., Patrick A. O'Hare and Guy W. Horsley, Jr., Sr. Asst. Attys. Gen., John R. Butcher, Gregory E. Lucyk, George W. Chabalewski, Fred R. Kozak and J. Steven Sheppard, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on defendants' motion to dismiss the amended complaint, or, in the alternative, for summary judgment. Defendants assert that plaintiff's amended complaint fails to state a claim for a variety of constitutional reasons, and, as a threshold matter, this Court should exercise *Younger* abstention. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

For the reasons set forth below, the Court concludes from the motions, accompanying affidavits, and the circumstances of this case, that abstention pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is mandated. Because of this conclusion, it is unnecessary to reach further constitutional issues.

## I. BACKGROUND

Plaintiff Kim–Stan, a Virginia corporation, operates a sanitary landfill in Alleghany County, Virginia. Defendant Cynthia V. Bailey is the Executive Director of the Virginia Department of Waste Management ("DWM"); defendant Richard N. Burton is the Executive Director of the State Water Control Board ("SWCB"). The amended complaint also named DWM and SWCB as defendants; however, the plaintiff voluntarily dismissed the two agencies on February 12, 1990.

Beginning in August 1988, the parties sought to abate the leachate[1] discharge from plaintiff's landfill. Concurrently, the plaintiff began to accept out-of-state waste, which triggered public protest. The efforts to abate the pollution continued into the spring of 1989.

The Court's decision to abstain turns on the precise timing of the following sequence of events.

On June 2, 1989, a fish kill was reported at a pond that was polluted by Kim–Stan's leachate discharge. Later in the day, defendant Bailey ordered the landfill to cease accepting waste until the discharge was abated; Bailey followed up with a letter on June 3 imposing conditions of further operations. Kim–Stan claims that the leachate discharge was caused by waste buried over a year prior to the fish kill and that ceasing to accept waste would not abate the discharge. Further, Kim–Stan claims that abating all leachate discharge would constitute a massive project that would ultimately destroy the business.

On June 5, 1989, upon discovery of additional leachate discharge, DWM issued an official emergency order directing the landfill to cease accepting waste until the discharge was abated.

On June 6, 1989, in response to the fish kill, SWCB issued an Emergency Special Order closing the landfill because of the discharge that was "grossly affecting the health of fish and aquatic life and the reasonable, beneficial uses of state waters." As discussed below, this order began state proceedings for purposes of mandatory *Younger* abstention. That same day, defendant Bailey also sent a letter to Kim–Stan requiring it to cease off-site discharge before the landfill reopened.

On June 14, 1989, Kim–Stan certified that it had complied with the agencies' orders; however, DWM inspectors determined that the discharge continued.

---

**1.** Leachate is a liquid that has passed through or emerged from solid waste and contains soluble or suspended degradation products of waste.

On June 15, 1989, DWM issued a second emergency order revoking Kim–Stan's permit and prohibiting Kim–Stan from accepting waste.

On June 16, 1989, plaintiff filed the instant suit. The same day, the United States Magistrate granted the plaintiff a temporary restraining order enjoining DWM from enforcing the June 15 emergency order. Plaintiff's original and amended complaints seek injunctive and monetary relief to remedy the alleged violations of the Equal Protection Clause, the Commerce Clause, the Virginia Administrative Procedures Act, the Due Process Clause, and the Takings Clause.

On June 23, 1989, the Commonwealth of Virginia, on behalf of SWCB, filed a bill of complaint in the Circuit Court of Allegheny County seeking temporary and permanent injunctions and a judgment for civil penalties against Kim–Stan for violations of SWCB's Emergency Special Order.

On June 28, 1989, this Court issued another temporary restraining order enjoining SWCB from pursuing any action against Kim–Stan in any other forum. The order also enjoined Kim–Stan from allowing leachate discharge. The temporary restraining order was to be effective until the hearing on the preliminary injunction scheduled for July 3.

On July 3, 1989, the parties represented to the Court that the matter had been settled, and the scheduled hearing was cancelled. At the parties' request, this Court lifted the temporary restraining order and stayed the action in this Court. As part of the proposed settlement, DWM issued a superseding order and entered into a consent decree with SWCB and Kim–Stan to be entered in the pending case in the Circuit Court of Allegheny County. The settlement was contingent upon approval by SWCB following the appropriate public comment period.

On December 11, 1989, SWCB formally considered the proposed settlement and ultimately rejected it in light of the public comment and evidence that plaintiff had not yet abated the discharge.

On December 19, 1989, because of the failed settlement, DWM issued a notice of a formal hearing under the Virginia Administrative Procedures Act to consider revocation of the landfill's permit.

On December 22, this Court vacated the stay and allowed the plaintiff to file an amended complaint on January 10, 1990.

On December 29, 1989, the County of Allegheny filed a bill of complaint against Kim–Stan in the Circuit Court of Allegheny County, alleging violations of county zoning requirements. Kim–Stan filed a cross-bill against DWM, SWCB, and Bailey to enjoin the pending DWM hearing.

On February 12, 1990, defendants' motion to dismiss, or, in the alternative, for a summary judgment, was heard by this Court.

## II. DISCUSSION

"Under the *Younger* abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). The underlying principle is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with ongoing state criminal proceedings. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). The abstention principle has been extended to certain civil proceedings, including administrative proceedings of judicial character. The Supreme Court, however, has recognized that abstention is improper when the state proceeding is the result of bad faith or harassment. *Younger v. Harris,* 401 U.S. 37, 53–54, 91 S.Ct. 746, 754–755, 27 L.Ed.2d 669 (1970). Thus, notwithstanding the bad faith exception, abstention is proper when the following three requirements are met. First, state proceedings must be ongoing before the federal court engages in substantial pro-

ceedings on the merits; second, the state proceedings must present an opportunity for the federal claims to be raised; finally, important state interests must be at stake. The Court finds in the instant case that all three requirements are met, and further, no bad faith has been demonstrated.

### Ongoing State Proceedings

■ The first requirement of ongoing state proceedings is only met when state proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). Thus, in the instant case, the Court's task was to determine both when state proceedings commenced and when proceedings of substance commenced in this Court. For two alternative reasons, the Court concludes that state proceedings were ongoing before federal substantive proceedings commenced. First, SWCB's June 6 order triggered state administrative proceedings of a judicial nature before the complaint in the instant action was filed on June 16. Thus, irrespective of when federal proceedings of substance began, the state proceedings were already ongoing. Second, SWCB's suit filed June 23 in the Circuit Court of Allegheny County was ongoing before any federal substantive proceedings were undertaken because the prior June 16 temporary restraining order issued by the United States Magistrate did not constitute a substantive federal proceeding for purposes of *Younger* abstention.

Under the first alternative holding, this Court must determine whether state proceedings were initiated when defendants issued emergency orders (on June 5, 6, and 15) or on June 23 when SWCB actually filed a suit in the state court. *Younger* abstention is exercised when either state criminal or certain civil proceedings are ongoing. The Fourth Circuit recently recognized that "[i]f the ongoing state proceeding is judicial in nature, *Younger* abstention clearly applies. Administrative hearings are not judicial in nature, however, if state law expressly indicates that the proceeding is not a judicial proceeding or part of one, or if the proceeding lacks trial-like trappings." *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1228 (4th Cir.1989) (citations omitted).

Notwithstanding the DWM's emergency orders,[2] the Court holds that SWCB's June 6, 1989 Emergency Special Order began a state proceeding that is judicial in nature. The Emergency Special Order was issued to Kim–Stan pursuant to the Virginia Code which gives SWCB the power to order owners to "cease and desist" from polluting the state's waters under certain circumstances. Va.Code Ann. § 62.1–44.15(8b). Normally such orders are issued only after a formal hearing; however, SWCB may issue such special orders in advance of a hearing if the owner is grossly affecting the public health, water supply, etc. *Id.* SWCB must hold a subsequent hearing to affirm, modify, amend or cancel the emergency order. *Id.* The Code further outlines require-

---

**2.** The Court finds it unnecessary to determine whether the DWM emergency orders initiated state proceedings "judicial in nature" because the SWCB emergency order clearly was such a proceeding. The Court is admittedly skeptical of the DWM orders; unlike the SWCB order, the Code Section providing for DWM orders does not explicitly demand a formal hearing after the emergency order, *see* Va.Code Ann. Sec 10.1–1402(17), 10.1–1455, although proceedings through the Virginia Administrative Procedures Act are available.

Further, the orders suggest impossible demands issued with an ulterior motive. Thus, the DWM emergency orders may not rise to the level of a state proceeding with judicial trappings. Nevertheless, Kim–Stan had ample opportunity to raise its constitutional claims in the

proceedings begun by the SWCB order, in the subsequent state court proceeding brought by SWCB, in the appeal of part of the consent decree among SWCB, DWM, and Kim–Stan, in the state court proceeding brought by the County, and finally, in the current administrative proceedings recently instituted by DWM. Thus, although DWM may not have been officially involved in an ongoing state proceeding within the meaning of *Younger* abstention until it was a party to the consent decree, corresponding state proceedings provided Kim–Stan with a forum to raise its concerns. Finally, at the least, DWM was involved in ongoing state proceedings when it entered into the consent decree, which was, as discussed *infra,* before any substantial proceedings on the merits began.

ments for formal hearings that include the right to a record, issuance of subpoenas, and the application of evidentiary rules. Va.Code Ann. Sections 62.1–44.20 *et seq.* Finally, any owner aggrieved by a SWCB final decision is entitled to judicial review thereof under the Administrative Procedure Act. Va.Code Ann. Section 62.1–44.-29.

*Telco Communications* guides the reasoning in the instant case. In *Telco,* the Virginia Office of Consumer Affairs investigated the plaintiff Telco and subsequently, after months of discovery, held an informal fact-finding conference. The Office of Consumer Affairs, however, neither initiated a formal hearing nor instituted a formal prosecution. The Fourth Circuit reasoned that because the informal conference need not be followed by the institution of formal proceedings, the conference was not indicative of whether administrative proceedings would continue. *Id.* at 1228. Thus, the Fourth Circuit concluded that the fact-finding conference did not constitute ongoing state proceedings for purposes of *Younger* abstention.

In the instant case, however, state law requires that an emergency special order be followed by a formal hearing with the possibility of an appeal through the Administrative Procedure Act. Accordingly, SWCB's Emergency Special Order advised plaintiff that a formal hearing would be held pursuant to the Code.[3] Thus, unlike the *Telco* plaintiff who was faced with "uncertain prospects," Kim–Stan knew that a formal administrative hearing awaited. *Id.*

In *Telco* the Fourth Circuit also emphasized that the informal fact-finding process was not even remotely judicial in nature: the participants were not sworn, no record was maintained, no opportunity was given to examine or cross-examine. *Id.* All of

these aspects, however, are included in a SWCB formal hearing.

The *Telco* opinion emphasizes that abstention is always improper before such state proceedings have begun. While the negative pregnant may be that abstention is proper once formal proceedings have begun, such a strict cutoff may perpetuate the race to the courthouse and encourage both premature enforcement and premature federal suits.[4] Nevertheless,[5] this Court finds that SWCB's Emergency Special Order began a state proceeding judicial in nature. Such orders are normally preceded by a formal hearing; however, the fact that state law allows the formal hearing to follow the emergency order will not defeat its effect of beginning state proceedings. Thus, under the first alternative holding, this ongoing state proceeding on June 6 preceded any possible federal substantive proceeding.

■ The second alternative basis for holding that state proceedings were ongoing is that SWCB's June 23 bill of complaint in the Circuit Court of Allegheny County preceded any federal proceedings on the merits. *Younger* abstention is required only when state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). This Court holds that the issuance of the June 16 temporary restraining order ("TRO") was not a proceeding of substance, and therefore no federal substantive proceeding preceded the filing of the June 23 suit in state court.

The Supreme Court has specifically left open the issue of whether the issuance of a TRO is a substantial proceeding, although it has held that the grant of a preliminary injunction is such a proceeding. *Hawaii Housing Authority v. Midkiff,* 467 U.S.

---

3. It should be noted that the hearing was cancelled due to a proposed settlement; however, this does not affect the "judicial trappings" of the process.

4. Likewise, as discussed below, if temporary restraining orders were treated as substantial proceedings on the merits, parties would be

given an additional tool to prematurely cut off state proceedings by pursuing the abbreviated, *ex parte* method.

5. As the Fourth Circuit observed, other requirements safeguard against this race. *Telco,* 885 F.2d at 1229 n. 1.

229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) ("whether issuance of the February temporary restraining order was a substantial federal court action or not, issuance of the June preliminary injunction certainly was."). Further, the Court has held that the denial of a temporary restraining order is not a substantial proceeding on the merits. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The grant of a TRO is somewhere in the middle; as a temporary affirmative act, it is more than a denial of a TRO, yet less than the issuance of a preliminary injunction.

For the reasons discussed below, this Court holds that while the issuance of a preliminary injunction constitutes "proceedings beyond the embryonic stage," the issuance of a TRO does not. A preliminary injunction requires notice to the opposing party and requires evidence that goes beyond the unverified allegations of the pleadings. Fed.R.Civ.P. 65(a). In the usual case, a preliminary injunction is decided only after both parties have presented evidence and argument in support of their respective positions. Further, the Court, in granting or denying a preliminary injunction, must set out the findings of fact and conclusions of law in support of the order. A preliminary injunction is an extraordinary remedy granted only when the movant by a clear showing persuades the Court that it is likely to succeed on the merits and that it will suffer irreparable harm.

In contrast, a temporary restraining order may be issued *ex parte;* the opposing party may not even have the opportunity to be heard before the TRO is issued. The Court need not make specific findings of fact or conclusions of law. The movant need only present facts that clearly show an irreparable injury. A TRO may only preserve the status quo until there is an opportunity for a hearing on a preliminary injunction. Fed.R.Civ.P. 65(b). Finally, the order may initially last no longer than ten days. The two proceedings are entirely different; a preliminary injunction requires the Court to predict the outcome on the merits while a temporary restraining order

only requires the Court to determine whether to maintain the status quo for ten days until the need for a preliminary injunction or other remedy is determined. Thus, the Supreme Court has held that the denial of a TRO is not a meaningful proceeding on the substance; this Court holds that the grant of a TRO is likewise not a meaningful proceeding on the merits.

This Court need not decide exactly when substantial proceedings commenced in federal court. It is enough for the purposes of *Younger* abstention to hold that substantive proceedings did not start when the Magistrate issued the June 16 temporary restraining order.

In sum, for two alternative reasons, this Court holds that state proceedings were ongoing before federal substantive proceedings commenced and thus, the first requirement for *Younger* abstention is satisfied. The SWCB's June 6 order initiated state proceedings that were ongoing before federal proceedings commenced. Second, the SWCB's suit in state court was filed on June 23, before any proceedings of substance began in this Court.

### Opportunity to Raise Federal Claims in State Proceedings

*Younger* abstention is only exercised when the federal plaintiff has an opportunity to raise his federal claims in the ongoing state proceedings. Plaintiff has had, and currently has, multiple opportunities to raise its federal claims in the different state proceedings, including two administrative proceedings and two state court proceedings. First, plaintiff could raise the federal issues in both currently ongoing administrative proceedings. Plaintiff is appealing the July 3, 1989 DWM order that resulted from the settlement. That appeal almost exactly mirrors the instant complaint and includes such constitutional claims as violations of the Due Process Clause and the Takings Clause. Plaintiff's other administrative route is through the recently initiated DWM revocation process. Plaintiff can eventually appeal these administrative decisions to the state court which can provide further protection. Sec-

ond, the plaintiff could also raise its federal claims in the two ongoing state suits which include the June 6 SWCB suit and the recently filed suit on behalf of Allegheny County. Thus, plaintiff has had ample opportunity to raise its federal claims in all four ongoing state proceedings.[6]

### Important State Interests

Virginia has a vital interest in the health and safety of its citizens. Protecting the waters from environmental hazards is crucial to this interest. Thus, for *Younger* abstention, the requirement that an important state interest be at stake is met.

### Bad Faith Exception

Federal interference in an ongoing state proceeding is appropriate "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1970). *See also Younger*, 401 U.S. at 53–54, 91 S.Ct. at 754–55. Plaintiff submits that defendants acted pursuant to an illegal motivation to ban out-of-state waste.[7] While Bailey may have sought to prevent the Commonwealth from becoming a landfill for New Jersey and Pennsylvania, that desire should not be equated with bad faith harassment in closing Kim–Stan.[8] There is no evidence that defendants intentionally singled out Kim–Stan for discriminatory treatment; rather, defendants reacted to leachate discharges that had resulted in a fish kill.[9] When the leachate was not remedied as promised, defendants ordered Kim–Stan to cease accepting waste. These logical steps to counteract pollution and a fish kill do not add up to bad faith harassment. Further, the fact that the accompanying public outcry against Kim–Stan for the pollution and importation of out-of-state waste could have influenced the officials' decisions does not transform the emergency orders into harassment. Rather, the public involvement is just another factor in the defendants' calculus.

## III. CONCLUSION

Abstention is proper in the instant case because multiple state proceedings were ongoing before substantive proceedings on the merits began in this Court. Plaintiff has had an abundance of opportunities to bring its federal claims in these state proceedings, and, in light of the critical state

---

6. For purposes of *Younger* abstention, all four proceedings may not be relevant because some may have been initiated after substantive proceedings may have begun in this Court. Nevertheless, at the very least, the SWCB special emergency order that triggered ongoing state proceedings and the state suit initiated on June 23, 1989 did provide plaintiff with ample opportunity to raise its federal claims.

7. Defendant Bailey revealed in a June 22, 1988 letter that "I think that the time has come to explore what methods the Commonwealth may use to ban the importation of out-of-state waste. My interest is not in banning all importation of waste, but in devising a mechanism for Virginia to avoid being a landfill for New Jersey and Pennsylvania."

8. Defendant Bailey's statement does not reveal bad faith harassment of Kim–Stan or intent to break the law. First, the statement was made in June 1988, almost a year before the events at issue occurred. Second, while banning the importation of out-of-state waste may be violative of the Commerce Clause, *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), the desire to avoid becoming a landfill for the Northeast is not the equivalent of bad

faith. Bailey's statement does not reveal an intent to limit waste illegally; rather, it expresses a valid concern of the Commonwealth and the desire to explore mechanisms, not necessarily illegal, to avoid becoming dumped upon excessively.

9. Plaintiff claims that other landfills causing fish kills in 1989 were not shut down. There is no evidence, however, that the failure to proceed against other landfills was a result of a deliberate policy of harassment singling out Kim–Stan; rather, the selective prosecution is a result of a publicly funded state enforcement program with limited resources. Further, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1961). Rather, a selective enforcement policy is an equal protection violation only if it is based on a suspect classification. *Id.* Thus, even if Kim–Stan was the first landfill subject to this enforcement, it has neither an excuse for the excessive leachate discharge, nor grounds for a complaint of bad faith.

issues involved, this federal court will not interfere.

An appropriate Order shall issue.

## ORDER

For the reasons stated in the accompanying Memorandum, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that defendants' motion to dismiss be, and the same is hereby GRANTED, and this cause stands DISMISSED WITHOUT PREJUDICE.