**James W. HUNT and Tony Powell,**

v.

**CITY OF LONGVIEW, et al.**

No. 6:95 CV 555.

United States District Court,
E.D. Texas,
Tyler Division.

Aug. 18, 1995.

---

Glenn Perry, Timothy Womack, Glenn Perry & Assoc., Longview, for plaintiffs.

David Brabham, Asst. Dist. Atty., Larry Schenk, Longview, E. Allen Taylor, Stephen Howard, Tim Sralla, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

HANNAH, District Judge.

Pending before the court are Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss. Upon careful consideration the court holds that Plaintiff's Motion for Preliminary Injunction is GRANTED and Defendants' Motion to Dismiss is DENIED.

### Background

Plaintiffs James W. Hunt and Tony Powell are duly elected members of the City Council for the City of Longview, Texas. Defendants are the City of Longview, the Mayor of Longview, members of the City Council, the District Attorney for Gregg County, and the Attorney General for the State of Texas. Plaintiffs' lawsuit arises out of a qualification for holding office in the City of Longview which requires that office holders not be in arrears to the City of Longview. Section 2.03 of the City Charter, entitled "Council Qualifications," provides in pertinent part:

"The Mayor and each member of the City Council shall have the following qualifications:

\* \* \* \* \* \*

(e) Must not be in arrears in payment of taxes or other liabilities due the City of Longview."

Section 2.04 of the City Charter, entitled "Forfeiture of Office," provides in pertinent part:

"The Mayor or any Councilman shall forfeit his office if he:

(a) Lacks at any time during his term of office any qualification for the office prescribed by this Charter or by law."

The Home Rule Charter was adopted by the voters of the City of Longview and has been in effect since January 1, 1979.

No Mayor or Council member has ever been removed pursuant to Section 2.03(e), and no procedure is in place to determine or discover whether this particular qualification has been and continues to be met. When a candidate for city office intends to run for election, he or she must sign an unsworn statement that he or she is not in arrears to the City of Longview. After Plaintiffs were elected to the City Council, a local news reporter brought the suspected liabilities to the attention of the City Council. Plaintiffs dispute the allegation that they are in arrears to the City of Longview. It is alleged that Plaintiff Hunt has failed to pay the costs of work done by city crews in correcting code violations on property in which he has an owning interest and that Plaintiff Powell has failed to pay city property taxes on time.

On July 11, 1995, the Longview City Council took up as part of its agenda the matter of possible violations of Sections 2.03(e) and 2.04(a) of the City Charter by two of its members, Plaintiffs Hunt and Powell. On the same date, the City Attorney, after performing his own research and consulting the Secretary of State's Office and the General Counsel for the Texas Municipal League, provided the City Council with a memorandum analyzing Section 2.03(e) of the City Charter. The City Attorney's memorandum concluded as follows:

"*Conclusions*

Charter provisions similar to those found in Section 2.03(e) of the City Charter, requiring as a qualification for service on the City Council that a Councilmember not be in arrears in payment of taxes or other liabilities, have been found in violation of the Fourteenth Amendment to the United States Constitution."

The City Attorney's memorandum also stated that if a qualification for holding office under Section 2.03(e) is without legal authority, then forfeiture under Section 2.04 based upon that qualification would also be without legal authority.

At the July 11, 1995 meeting, the City Council passed resolutions censuring Councilmen Hunt and Powell for being in noncompliance with Section 2.03(e) of the City Charter, designating itself as relator pursuant to Chapter 66 of the Texas Civil Practices and Remedies Code, and asking the District Attorney of Gregg County to initiate *quo warranto* proceedings [1] to remove Hunt and Powell from the City Council. Hunt and Powell were present and were allowed to vote. The District Attorney informed the City Council that he would be willing to petition a state court for leave to file an information in the nature of quo warranto if the City Council would hire private attorneys to prepare all the documents and research necessary to do so. In other words, the District Attorney would sign the necessary papers, but would not expend any county resources to initiate and litigate the quo warranto proceedings. On July 25, 1995, the City Council held a closed discussion of the district attorney's proposal that the City pay the legal expenses of the impending litigation to remove Hunt and Powell. Hunt and Powell were not allowed to attend, participate in the discussion or vote on the matter. The participating members of the City Council voted to pay for the legal proceedings.

With the impending threat of removal from office, Plaintiffs filed suit in this court

---

1. Only the district attorney or attorney general may petition a district court for leave to file an information in the nature of quo warranto. Tex. Civ.Prac. & Rem.Code § 66.002 (Vernon 1986).

asking that Section 2.03(e) of the Longview City Charter be declared unconstitutional under the Fourteenth Amendment's Equal Protection Clause and First Amendment's Free Speech Clause. Accompanying this declaratory judgment action, filed on August 1, 1995, was Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction. On August 2, 1995, the court granted Plaintiff's Motion for Temporary Restraining Order until August 11, 1995 at which time a preliminary injunction hearing would be held to determine whether the terms of the temporary restraining order should continue in the form of a preliminary injunction until the court could rule on Plaintiff's declaratory judgment action. The temporary restraining order prevented initiation of quo warranto proceedings as provided in section 66.002 of the Texas Civil Practice and Remedies Code until a preliminary injunction hearing could be held. The temporary restraining order was issued without notice as allowed by Federal Rule of Civil Procedure 65(b). At no time after its issuance did Defendants move to dissolve or modify the temporary restraining order pursuant to Rule 65(b).[2]

At the preliminary injunction hearing, the court first heard arguments on Defendants' Motion to Dismiss. Defendants argued that the court should abstain under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). At the conclusion of the abstention arguments, the court informed the parties that it would not rule from the bench on the abstention issue and would take it under advisement. Thereupon the court ordered that the preliminary injunction hearing would continue on the merits. Defendants objected to continuing the hearing on abstention grounds. After the preliminary injunction hearing, the court extended the temporary restraining order seven days in order to consider and rule on Plaintiffs' Motion for Preliminary Injunction.

### Analysis

■■■ The parties do not dispute that this court has jurisdiction to hear this declaratory judgment action challenging the constitutionality of a provision of the Longview City Charter under the First and Fourteenth Amendments. Defendants argue that despite having jurisdiction, this court should nonetheless abstain from hearing this matter invoking doctrines enunciated by the United States Supreme Court to preserve notions of federalism and comity. It bears noting that "[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Chicot County v. Sherwood*, 148 U.S. 529, 534, 13 S.Ct. 695, 697–98, 37 L.Ed. 546 (1893) (citations omitted). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat. 264, 404, 19 U.S. 264, 404, 5 L.Ed. 257 (1821). The right of a plaintiff to choose federal court when there is a choice cannot properly be denied. *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909) citations omitted). The Supreme Court has determined that there are some classes of cases in which the withholding of authorized equitable relief is appropriate because of the undue interference with state proceedings. However, abstention remains the exception, not the rule. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2326–27, 81 L.Ed.2d 186 (1984); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir.1995).

### I. *Abstention*

■■■ Defendants move to dismiss this action based upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention under *Younger* "is generally deemed appropriate [when] assumption of jurisdiction by a federal court would inter-

---

**2.** The issuance of a temporary restraining order is not appealable. *Bd. of Governors of the Federal Reserve System v. DLG Financial Corp.*, 29

F.3d 993 (5th Cir.1994); *In re Lieb*, 915 F.2d 180 (5th Cir.1990).

fere with pending state proceedings, whether of a criminal, civil, or even administrative character." *Word of Faith World Outreach Center Church, Inc. v. Morales,* 986 F.2d 962, 966 (5th Cir.), *cert. denied,* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993) (citations omitted). *See also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying *Younger* to state civil proceedings); *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (applying *Younger* to state administrative proceeding which is judicial in nature). *Younger* abstention, however, is inappropriate when state legislative action is involved. *See New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

■■■ The underlying basis for this doctrine is

the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the national Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger,* 401 U.S at 44, 91 S.Ct. at 750. To determine whether *Younger* abstention is appropriate, the court must answer three questions: (1) whether the state proceedings "constitute an ongoing state judicial proceeding," (2) whether the proceedings "implicate important state interests," and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Louisiana Debating and Literary Ass'n v. City of New Orleans,* 42 F.3d at 1490 (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). Even if the preconditions for abstention are met, a district court's decision not to abstain will be reviewed only for abuse of discretion. *Id.* The court will address each *Younger* factor in turn.

## A. Ongoing State Proceedings

■■■ *Younger* abstention is required only when state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). A preliminary injunction hearing is considered a proceeding of substance on the merits. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Doran v. Salem Inn, Inc.,* 422 US. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Whether granting a temporary restraining order is a "proceeding of substance on the merits" is unclear. *Compare Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. 646 (E.D.Va.1990) (holding that granting a TRO is not a proceeding of substance on the merits) *with Graham v. Breier,* 418 F.Supp. 73 (E.D.Wis.1976) (holding that granting a TRO is a proceeding of substance on the merits).

■■■ In order to determine whether state proceedings were pending, it is necessary to examine the nature of a *quo warranto* proceeding. Quo warranto suits are those through which the state acts to protect itself and the good of the public generally. *Superior Oil Co. v. City of Port Arthur,* 726 F.2d 203, 204–05 n. 1 (5th Cir.1984) (citing *Fuller Springs v. State ex rel. City of Lufkin,* 513 S.W.2d 17 (Tex.1974)). Quo warranto is an ancient prerogative writ in the nature of a writ of right for the king against one who claims an office, franchise, or liberty. Quo warranto suits inquire by what authority the claimant supports his claim. *Id.* (citing *State ex rel. City of Colleyville v. City of Hurst,* 519 S.W.2d 698 (Tex.Civ.App.—Forth Worth 1975, *writ ref'd n.r.e.*). Quo warranto is the

appropriate and exclusive procedure to declare that an official is no longer qualified to occupy his or her elected office. *See State ex rel. McKie v. Bullock*, 491 S.W.2d 659 (Tex. 1973); *Toyah Independent School Dist. v. Pecos–Barstow Consol. Independent School Dist.*, 497 S.W.2d 455 (Tex.Civ.App.—El Paso 1973, *writ ref'd n.r.e.*), *cert. denied*, 415 U.S. 991, 94 S.Ct. 1590, 39 L.Ed.2d 887 (1974).

Chapter 66 of the Texas Civil Practice and Remedies Code provides that an action in the nature of quo warranto is available when "a public officer does an act or allows an act that by law causes a forfeiture of his office." Tex.Civ.Prac. & Rem.Code § 66.001(2). Section 66.002 provides the necessary steps to initiate a quo warranto proceeding:

**§ 66.002. Initiation of Suit**

(a) If grounds for the remedy exist, the attorney general or the county or district attorney of the proper county may petition the district court of the proper county or a district judge if the court is in vacation for leave to file an information in the nature of quo warranto.

(b) The petition must state that the information is sought in the name of the State of Texas.

(c) The attorney general or county or district attorney may file the petition on his own motion or at the request of an individual relator.

(d) If there is probable ground for the proceeding, the judge shall grant leave to file the information, order the information to be filed, and order process to be issued.

A city council may not initiate quo warranto proceedings; only the district attorney or attorney general may do so. *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698 (Tex.Civ.App.—Fort Worth 1975, *writ ref'd n.r.e.*). The city council also may not compel or order a district attorney or attorney general to initiate quo warranto proceedings. Whether to petition a state court for leave to file an information in the nature of quo warranto is within the sole discretion of the district attorney or attorney general. *Marshall v. City of Lubbock*, 520 S.W.2d 553 (Tex.Civ.App.—Amarillo 1975, *writ ref'd n.r.e.*).

In the case at bar neither the District Attorney nor the Attorney General petitioned the state district court for leave to file an information in the nature of quo warranto. During direct examination at the Preliminary Injunction hearing, the district attorney testified that he had not seen, reviewed, or signed any petition for leave to file an information in the nature of quo warranto. The district attorney testified that he was aware a private firm was retained to prepare and produce the necessary paperwork and supporting evidence to petition the district court, but that he was unaware what preparations had been made when Plaintiffs filed their declaratory judgment action in federal court. Nevertheless, Defendants argue that quo warranto proceedings were in progress by pointing to two discrete events. First Defendants point to the July 11, 1995 City Council meeting where the Longview City Council passed resolutions censuring Councilmen Hunt and Powell for being in non-compliance with Section 2.03(e) of the City Charter, designating itself as relator pursuant to Chapter 66 of the Texas Civil Practices and Remedies Code, and asking the District Attorney of Gregg County to initiate *quo warranto* proceedings to remove Plaintiffs Hunt and Powell. Secondly, Defendants point to the district attorney's decision to petition the state district court provided the Longview City Council agreed to retain private attorneys to litigate this matter and provided the private attorneys prepared the necessary paperwork to petition for leave to file an information.

The court concludes that neither event makes a quo warranto proceeding pending for purposes of *Younger* abstention. With respect to the July 11, 1995 City Council meeting, the act of censuring fellow members of the City Council for failing to meet the requirements of Section 2.03(e) of the City Charter is no more than a formal admonishment which the City Council may choose as a punishment for a fellow member's misconduct. The City Council is authorized to punish its members under Section 2.06 of the City Charter. Censuring is in no way a prerequisite to initiating a quo warran-

to proceeding, and, according to the terms of the statute, is totally irrelevant. The terms of the statute indicate that initiation of a quo warranto proceeding occurs, at the earliest, when the attorney general or district attorney petitions the state district court for leave to file an information in the nature of quo warranto. *See* Tex.Civ.Prac. & Rem.Code § 66.002(a). Even after the petition is filed, it is uncertain whether a quo warranto proceeding will occur, as the state judge must grant leave before the information may be filed. *See* Tex.Civ.Prac. & Rem.Code § 66.002(d). *See also Staples v. State ex. rel. King,* 112 Tex. 61, 73, 245 S.W. 639 (1922); *Bridge City v. State ex rel. Port Arthur,* 792 S.W.2d 217, 226 (Tex.Civ.App.—Beaumont 1990, *writ denied* ), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1624, 113 L.Ed.2d 721 (1991). The City Council's act of designating itself as relator and asking the district attorney to initiate quo warranto proceedings is merely a preliminary step insufficient by itself to initiate proceedings. Section 66.002(c) provides that the attorney general or district attorney may file the necessary petition either "on his own motion or at the request of an individual relator." The actions of the City Council merely make clear how the district attorney will be proceeding if he decides to do so. The district attorney has yet to proceed. The court notes that the correspondence of the city officials expressly state the intent of the City Council to have the district attorney "initiate" quo warranto proceedings, thus implying that such proceedings have not yet begun. (See Exhibit 5 and Exhibit 6 for Preliminary Injunction Hearing). Finally, the actions of the Longview City Council are not judicial in nature; they are legislative. *See New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (holding that *Younger* abstention does not extend to state proceedings which are legislative in nature).

The district attorney's conditional decision to initiate quo warranto proceedings is equally unavailing to support Defendants' position. The foremost impediment to Defendants' argument is once again the language of § 66.002(a). Petitioning a state district court for leave to file an information in the nature of quo warranto is the earliest event which would make that proceeding pending for purposes of *Younger* abstention. In addition, fixing the point when a quo warranto suit initiates on the district attorney or attorney general's discretionary decision to petition the appropriate state court could prove to be a tedious exercise. A district attorney would have to note the exact hour his decision was unequivocally made so that it could be compared with the exact hour a temporary restraining order issued. Such a discretionary decision is subject to change upon further research and consideration and does not easily avail itself to verification. This is an untenable position for the court to adopt. In any event, the decision to file a petition was conditioned upon the City Council paying for the litigation expenses of the quo warranto proceedings and upon a private attorney providing all necessary paperwork for filing of same. The district attorney would only sign the papers and attend trial.[3] The district attorney's conditions precedent were never met. At the preliminary injunction hearing the district attorney testified that he had never seen any prepared documents or a petition to be filed in state court. Also, as previously mentioned, no petition was ever filed in state court. Where no formal action has been undertaken, any disruption of state process will be slight. *See Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1229 (4th Cir.1989). The court finds that no quo warranto proceeding was pending so as to warrant abstention under the *Younger* doctrine.

**3.** Exhibit 6. Letter 7/21/95 from District Attorney Brabham to City Attorney Schenck. The letter provides in pertinent part:
 "This decision is conditioned upon the City of Longview incurring and being solely responsible for all legal expenses in connection with the quo warranto proceedings. This would include that counsel employed by the City of Longview be responsible for preparing the pleadings, preparing the cases for trial, taking the lead role at the trial, and pursuing the appeal, if any. The State would only assume the role necessary for the case to proceed as a quo warranto. This would include signing the pleadings and merely being present at trial but taking no other active role."

As an alternative argument Defendants assert that but for the granting of the temporary restraining order, a petition for leave to file an information in the nature of quo warranto would have been filed in state district court before this court could have held a preliminary injunction hearing. The district attorney and the city attorney have provided sworn affidavits indicating same. However, as of the date of the preliminary injunction hearing, neither attorney has seen the documents necessary to initiate a quo warranto proceeding.[4] Defendants argue that the court should abstain because when it granted the temporary restraining order, it prevented a quo warranto proceeding to initiate. This argument fails to persuade. The procedure followed by this court is precisely the procedure used in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984). In that case plaintiffs filed a complaint in federal court asking for temporary and permanent relief and for a declaration that Hawaii's Land Reform Act of 1967 was unconstitutional under the Fifth Amendment. The district court temporarily restrained the Hawaii Housing Authority from proceeding against plaintiffs' estates. At that time no state judicial proceedings were in progress. Plaintiff's preliminary injunction motion was granted in part. The Supreme Court held that judicial proceedings had not been initiated at the time proceedings of substance took place in federal court.

Similarly, state judicial proceedings had not been initiated at the time proceedings of substance, i.e., a preliminary injunction hearing, took place in federal court. The fact that Defendants would have initiated quo warranto proceedings is no exception to the principle enunciated in *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), that abstention is required only if state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." The rule is clear and unequivocal and leaves no room to consider what might have been. The temporary restraining order was necessary to protect this court's jurisdiction until a preliminary injunction hearing could be held. As a practical matter, a district court must give the parties time to research and prepare for a preliminary injunction hearing. At the time the motions for temporary restraining order and preliminary injunction were filed, no state court proceeding was pending. This court determined that a temporary restraining order should issue, thus maintaining the status quo until a preliminary injunction hearing could be held. Given that this exercise of jurisdiction was proper, it would be nonsensical for this court to abstain because Defendants assert that had they had the opportunity, they would have rushed to initiate a quo warranto proceeding before the scheduled preliminary injunction hearing. The court rejects Defendants' alternative argument.

### B. *Important State Interests*

The parties do not appear to dispute that the quo warranto proceedings at issue, whereby the State is a party to the action, implicate important state interests. The court agrees that important state interests could be at stake in a quo warranto proceeding and judicial determination of the constitutionality of a city charter.

### C. *Adequate Opportunity to Raise Constitutional Challenges in State Proceedings*

The parties also do not dispute that a state quo warranto proceeding would afford adequate opportunity to raise any constitutional challenges they may have to the Longview City Charter. The court agrees.

### D. *Conclusion*

The court concludes that the requisite factor of ongoing state proceedings has not been met and thus abstention under *Younger* is unwarranted. Because of this holding, the

---

**4.** Defendants further assert that granting a temporary restraining order is not a substantive proceeding on the merits. The court need not address the issue whether the granting of a temporary restraining order constitutes a substantive proceeding on the merits, because the court concludes that no state proceeding was "pending" under *Younger* and its progeny before the court conducted its preliminary injunction hearing.

court need not address Plaintiffs' alternative argument that the Defendants acted in bad faith, which would constitute an exception to *Younger* abstention.

This case presents interesting issues that necessarily·implicate concerns about federalism. The majority of the Longview City Council has decided it would like to initiate removal proceedings for two of its members for failure to pay liabilities allegedly owed to the City of Longview. No attempt to collect on these alleged liabilities has been made. Instead the City Council has decided it would like the district attorney to initiate two separate quo warranto proceedings against Hunt and Powell based upon their failure to meet a requirement in the City Charter which admittedly may be unconstitutional. A declaratory judgment action to consider the constitutionality of the City Charter provision at issue could save the City of Longview needless expense and delay. Once Defendants have answered and the parties .have briefed the issue raised in the declaratory judgment action, this court can expeditiously rule on the merits. If the provision of the City Charter is upheld, then that issue need not be relitigated in the state quo warranto proceeding. If the provision is held unconstitutional, then the need for two quo warranto proceedings is obviated.˙ The expense to the City in hiring attorneys to litigate the quo warranto action disappears. Under these circumstances, it would be more efficient and economical to proceed with the declaratory judgment action.

The court will now consider Plaintiffs' Motion for Preliminary Injunction.

## II. *Preliminary Injunction*

■■■■ Plaintiffs move for a preliminary injunction, requesting this court to enjoin Defendants from initiating a quo warranto proceeding against them until the court has an opportunity to rule on the merits of Plaintiffs' declaratory judgment action. To obtain a preliminary injunction, Plaintiffs must establish four factors:

(1) a substantial likelihood of success on the merits of their claim;

(2) a substantial threat that failure to grant the injunction will result in irreparable injury;

(3) the threatened injury outweighs any damage that the injunction may cause Defendants; and

(4) the injunction will not disserve the public interest.

*Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir.1991). None of the four elements have a fixed quantitative value; rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus. *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 180 (5th Cir.1975). However, each element must be established in order for a preliminary injunction to issue. *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir.1989) (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985)).

### A. *Substantial Likelihood of Success on the Merits*

■■■■ Plaintiffs' Complaint challenges the constitutionality of Section 2.03(e) of the Longview City Charter as violative of the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by its provisions is rationally related to a legitimate state interest. *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981); *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 174–75, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980); *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Plaintiffs assert that a qualification for holding office based upon a person's ability to pay taxes and liabilities to the city is not rationally related to any legitimate governmental interest. The Supreme Court has condemned restrictions on candidates based on wealth and land ownership. *See, e.g., Lubin v. Pan-*

*ish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). For example, the Supreme Court has struck down excessive filing fee requirements as violating the Equal Protection Clause. *Bullock v. Carter,* 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). Likewise, the Court has found property ownership requirements unconstitutional as a bar to ballot access. *Quinn v. Millsap,* 491 U.S. 95, 109 S.Ct. 2324, 105 L.Ed.2d 74 (1989); *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Although a candidate does not have a fundamental right to placement on a ballot, *Bullock,* 405 U.S. at 142–43, 92 S.Ct. at 855–56, the impact of eligibility requirements upon voters implicates basic constitutional rights. *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). A qualification that officeholders not be in arrears to the city in which they are elected to serve raises similar concerns. However, the United States Supreme Court and the Fifth Circuit have yet to rule on the precise issue before the court today.

Guiding the court's analysis are two circuit court of appeals opinions which address the issues directly. The first is *Deibler v. City of Rehoboth Beach,* 790 F.2d 328 (3d Cir.1986). At issue in *Deibler* was a provision of the charter of the City of Rehoboth Beach, Delaware, which provides that a candidate for the elected position of commissioner be a nondelinquent taxpayer and owner of real estate within the city. The Third Circuit held that the ballot access restriction was not rationally related to any legitimate governmental interest and violated the Equal Protection Clause of the Fourteenth Amendment. Diebler wanted to run for commissioner, but owed $264 in real estate taxes. Thus Diebler only challenged the requirement of non-delinquency, not the freeholder requirement. *Deibler,* 790 F.2d at 330.

The Third Circuit first determined that it would not apply strict scrutiny to the provision of the city charter because the right to seek and hold public office is not a fundamental right protected by the Constitution. *Id.* at 334 (citing *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)). Diebler did not advance the argument that intermediate scrutiny should govern, which is usually applied when the classification is based on gender or illegitimacy. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). The court resolved that the rational basis test should apply, i.e., the qualification in the city charter will survive if the distinction rationally furthers a legitimate state interest. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The court then considered the two governmental interests which would be furthered through the non-delinquency qualification.

First the city argued that the requirement of non-delinquency screens those candidates who do not have the necessary commitment to the well-being of Rehoboth Beach. It argued that a candidate who does not pay taxes does not have the same degree of concern for the community as one who does pay. The second interest advanced by the city was public respect for city government. The city argued that a commissioner who is delinquent in tax payments will create public cynicism for the commissioners and diminish their effectiveness among the electorate. The Third Circuit rejected both. The court reasoned that an individual's decision to pay taxes does not logically reflect his commitment to the city, because the decision may rest solely on economic, ideological or other personal grounds.[5] The court also commented that a landowner may have a legitimate dispute with the city over the amount owed or the landowner may not have the wherewithal to pay tax bills, rendering tax payments simply impossible. With respect to the city's second interest, avoiding public cynicism of elected officials, the court deter-

---

5. The court cited a Rutgers University Center study conducted in 1974 which surveyed delinquent property taxpayers. The study found that Poor landowners more frequently cited lack of funds due to personal emergencies as the reason for delinquency. Wealthier landowners fre-

quently stated that payment of taxes would make no economic sense because the value of their properties was less than the tax delinquency, reflecting an attitude that the proper recourse for the city was a tax sale. *Deibler,* 790 F.2d at 335.

mined that the popular vote, not a city charter, would better define the standards the electorate desires to be met. The court held that "equal protection is not served by such irrational classifications because they do not serve a legitimate governmental purpose, even one of engendering public respect." *Deibler*, 790 F.2d at 335–36. The *Deibler* court concluded:

> Today we consider the restriction of tax delinquency as an additional threshold qualification for an elected official. Tomorrow's restriction may concern failure to pay federal or state taxes. Thereafter, candidacy may be conditioned on municipal obligations such as sewer assessments, parking fines, dog law violations, jaywalking and other minor infractions. None of these potential qualifications bears on a candidate's maturity, intelligence, knowledge of the community, ability to recognize and solve community problems.
>
> Each new qualification decreases a voter's choice and consequently harms democratic government. Analysis of equal protection and our understanding of the legitimate interests of society counsel that candidacy conditioned on the payment of taxes is inimical to democratic government.

790 F.2d at 336–37.

The other circuit court of appeal decision on point is *Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir.1995). *Corrigan* involved a constitutional challenge to ballot access provision adopted by the City of Newaygo, Michigan, which prevents residents of the City who are delinquent on their local taxes or water and sewer fees from appearing on the ballot in elections for local offices.[6] The plaintiffs attempted to run for mayor and city council. The town clerk found that at the filing deadline they had not paid their local taxes and fees and refused to place their names on the ballot. The provision of the city charter was challenged on the ground, among others, that it violated the Equal Protection Clause of the Fourteenth Amendment. The Sixth Circuit first determined that strict scrutiny was inappropriate because plaintiffs did not comprise a suspect class. The court reasoned that the duty of paying taxes and water and sewer assessments is undertaken when a resident chooses to own property so that property owners who are unable to meet the civic obligations they have voluntarily assumed are not a suspect class. The court then proceeded to apply the rational basis test.

The *Corrigan* court first referred to the Third Circuit decision in *Deibler* and noted a distinction. While not disagreeing with the Third Circuit's conclusion that no rational basis existed for the governmental interests of screening candidates with commitment to the city and engendering public respect, *Corrigan*, 55 F.3d at 1217, the *Corrigan* court was presented with one additional governmental interest—administration of the tax system. The Sixth Circuit concluded that administration of the tax system was one rational basis, so that it need not decide whether the other moral justifications[7] for the ballot access restriction could survive the rational basis test. Therefore the *Corrigan* court determined that the non-delinquency requirement did not violate the Equal Protection Clause because it was rationally related to furthering the legitimate interest of administering the tax system.

Now to the matter at hand. First, the court concurs with the Third and Sixth Circuits that the rational basis test should apply. At the preliminary injunction hearing Defendants provided one justification for Section 2.03(e) of the Longview City Charter—promoting good citizenship. In keeping with the rationale of *Deibler*, the court holds that the requirement that elected officials pay alleged liabilities to the City or

---

6. The relevant section of the Newaygo city charter provides: "No person shall be eligible for any elective or appointive City office who is in default to the City." One plaintiff owed $372.63 in delinquent property taxes and $48.67 in water and sewer charges to the City. The other plaintiff owed $318.33 in past due property taxes to the City.

7. The city put forward three other justifications for the charter provision: "commitment" and "public respect" as asserted in *Deibler*, as well as protecting the integrity of the City's decision-making process with respect to taxation. *Corrigan*, 55 F.3d at 1216.

risk forfeiture of office is not rationally related to the governmental interest of promoting good citizenship. The City "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Cleburne v. Cleburne Living Center*, 473 U.S. at 446, 105 S.Ct. at 3258 (citing *Zobel v. Williams*, 457 U.S. 55, 61–63, 102 S.Ct. 2309, 2313–14, 72 L.Ed.2d 672 (1982); *United States Dep't of Agriculture v. Moreno*, 413 U.S. 528, 535, 93 S.Ct. 2821, 2826, 37 L.Ed.2d 782 (1973)). Keeping current with one's tax liabilities is not necessarily a mark of good citizenship. Good citizenship can also entail speaking out against unfair or excessive taxes. In this case Plaintiffs dispute that any money is owed to the City. Moreover, the court cannot agree with an argument that those who either fall on hard times or are too poor to pay taxes are bad citizens. The value of the citizenry is not dependent upon the size of its pocketbook. This case has been the subject of many local newspaper articles and television news reports. The electorate has been informed. If the voters of Longview decide they do not wish to be represented by those who are delinquent in paying city taxes, they can do so at the ballot box.

When asked by the court whether Defendants were arguing that Section 2.03(e) could be used as a revenue collecting vehicle, Defendants, through counsel, stated, "No, I'm just saying it would be a beneficial by-product of the City, Your Honor." The mayor verified this by testifying that he could think of no other justification for the charter provision except the moral one of "good citizenship." Also, Defendants are unaware of any instance when taxes were collected through this method. Indeed Defendants could not argue that it is concerned about administering the tax system because no formal efforts have been made to collect on the alleged liabilities to the City of Longview. Moreover, it is questionable whether removal from office is rationally related to the government's interest in administration of the tax

system. It is unclear whether that interest could ever be promoted through these means. In this respect the court disagrees with the analysis in *Corrigan*. If the City needs to collect on liabilities owed to it, let it do so as it would against any other citizen who is in arrears to the City. Removing one from office for failure to pay taxes and fees, all for the touted purpose of administering the tax system, without ever attempting to collect on the liabilities owed, is irrational. The court concludes that Section 2.03(e) of the Longview City Charter is not rationally related to the interest of administration of the tax system.

The only argument Defendants present on the issue of substantial likelihood of success on the merits is that home rule charter provisions are presumed to be constitutional. *McDonald v. City of Houston*, 577 S.W.2d 800, 801 (Tex.Civ.App.—Houston 1979, *writ ref'd n.r.e.*). Obviously that presumption can be rebutted. *See, e.g., Claitor v. City of Comanche*, 271 S.W.2d 465 (Tex.Civ.App.— Eastland 1954, *no writ*); *City of Amarillo v. Tutor*, 267 S.W. 697 (Tex.Comm'n App.1924, judgm't adopted).

Defendants also challenge the applicability of *Corrigan* and *Deibler* because they are ballot access cases. In the case at bar, Plaintiffs already have been elected to serve as City Council members, and Defendants are seeking to remove them from office for failure to meet a qualification for holding office. Defendants raise a distinction without a difference. The fact that the Third and Sixth Circuit decisions are ballot access cases as opposed to removal from office cases does not displace the applicability of the Equal Protection analysis. The court finds that the ballot access cases are analogous.

 The court concludes that Plaintiffs have shown a substantial likelihood of success on the merits.[8]

---

8. This ruling should not be construed as a final determination on the merits. In the preliminary injunction context, Plaintiffs need not prove their case. *H & W Industries, Inc. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir.1988). It is sufficient if Plaintiffs show a substantial likelihood of success. A final determination is possible only after a full evidentiary trial on the merits. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n. 11 (5th Cir.1991).

**B.** *Irreparable harm*

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Justin Industries, Inc. v. Choctaw Securities,* 920 F.2d 262, 269 (5th Cir.1990) (quoting *Canal Authority v. Callaway,* 489 F.2d 567, 576 (5th Cir.1974)). The central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages. *Meridian v. Algernon Blair, Inc.,* 721 F.2d 525, 529 (5th Cir.1983). The injuries threatened if the conduct is not enjoined will be irreparable and irrevocable. Plaintiffs are threatened with removal from office. Removal from office is not the type of injury which can be compensated monetarily.

Defendants argue that the constitutionality of the City Charter can be challenged in the quo warranto proceeding, and that removal from office is not a foregone conclusion. However, the requirement is "a substantial threat" that failure to grant the injunction will result in irreparable injury, not "an absolute certainty". It is possible that at the conclusion of the quo warranto action Plaintiffs would be removed from office before a final appeal could be decided. Defendants suggest that if Hunt and Powell are removed, they can run again in the special election which must immediately follow their ouster. That is no solution. Furthermore, there is no guarantee that removal would be stayed pending the outcome of an appeal in state court. The court finds that Plaintiffs have met their burden of showing a substantial threat of irreparable harm.

**C.** *Threatened Injury vs. Damage an Injunction may cause Defendants*

The threatened injury of losing an elected office far outweighs any real harm to Defendants. Defendants' attempt to initiate quo warranto proceedings is merely postponed until the court rules on the declaratory judgment action.

**D.** *Disservice to Public Interest*

Granting a preliminary injunction will not disserve the public interest. To the contrary the public interest will be better served if this court rules on the constitutionality of the City Charter provision before quo warranto proceedings begin. If the City Charter is held unconstitutional, the city taxpayers will not have to fund two separate quo warranto proceedings in state court. Also the public would not suffer through removal proceedings of elected city council members under a potentially unconstitutional provision of the City Charter. Even if the City Charter provision is determined to be constitutional, that is one less issue the state court would have to address during the quo warranto action. Those members of the public who elected Plaintiffs will be well-served by a proceeding to insure that before Plaintiffs will be removed from office, the underlying basis for such removal is constitutional.

Because Plaintiffs have shown all four elements necessary to obtain a preliminary injunction, the court finds that it should be granted.

Therefore it is

ORDERED that Plaintiffs' Motion for Preliminary Injunction is hereby GRANTED. Defendants, and all persons acting in concert or participation with them, are restrained from taking any actions of any kind, legal or otherwise, to assert and/or enforce Section 2.03(e) and/or Section 2.04(a) of the City Charter of the City of Longview, Texas, including initiating Quo Warranto proceedings, against Plaintiffs in an effort to remove them from their duly elected offices of City Councilman in and for the City of Longview, Texas. This preliminary injunction shall remain in effect until the court has had an opportunity to decide this declaratory judgment action. The previous bond posted for the temporary restraining order remains in effect. It is

FURTHER ORDERED that Defendants' Motion to Dismiss is DENIED.