[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 6, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13317

_____

D. C. Docket No. 98-00083 CV-3-HL-4

FOR YOUR EYES ALONE, INC.,
d.b.a. For Your Eyes Alone,
WENDY BASKIN, et al.,

Plaintiffs-Appellants,

versus

CITY OF COLUMBUS, GEORGIA,
THE CITY COUNCIL OF COLUMBUS, GEORGIA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(February 6, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and GOLDBERG[*], Judge.

BIRCH, Circuit Judge:

For Your Eyes Alone, Inc. ("FYEA"), Wendy Baskin, Diane Sherman, and Robert Pennza appeal the district court's decision to abstain from considering their federal and state constitutional challenges to § 14-228 of the Adult Entertainment Code enacted by the City of Columbus, Georgia (the "City"). The district court based its ruling on the Younger[1] abstention doctrine, which precludes federal courts from exercising jurisdiction over suits aimed at restraining pending state criminal actions. Because we conclude that there was no pending state criminal action before proceedings of substance on the merits had taken place in federal court, we hold that Younger abstention was improper. Accordingly, we REVERSE.

## I. BACKGROUND

At the time this litigation commenced, FYEA owned and operated a lingerie modeling studio in Columbus, Georgia. Diane Sherman and Wendy Baskin were lingerie models at the studio, and Robert Pennza served as general manager. Their current dispute with the City began after the City Council of Columbus amended

---

[*]Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade, sitting by designation.

[1]Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971).

and reenacted the Adult Entertainment Code, Ordinance No. 96-21 (the

"Ordinance"), in 1996.[2]  The Ordinance, among other things, forbids a person who

has been convicted either of any felony or of a misdemeanor involving moral

turpitude from owning, managing, operating, or being employed by an "adult

entertainment establishment."[3]  Columbus Code art. VI, § 14-227.[4]  The Ordinance

also prohibits such establishments from allowing "private modeling sessions or

---

[2]In 1993, the City Council enacted the original version of the Adult Entertainment Code as Ordinance 93-79.  The Supreme Court of Georgia reviewed Ordinance 93-79 in Quetgles v. City of Columbus, 264 Ga. 708, 450 S.E.2d 677 (1994) ("Quetgles I").  In Quetgles I, the court reversed and remanded the trial court's dismissal of the plaintiffs' constitutional challenge to the Ordinance.  The court ruled that the plaintiffs had raised a justiciable issue concerning whether the City had enacted the Ordinance in furtherance of a governmental interest unrelated to free speech.  In response to the court's decision, the City Council amended and reenacted the Code as Ordinance 96-21 in 1996.

[3]Section 14-223 defines "adult entertainment establishments" as:
businesses in which, as the major activity, customers congregate primarily for the purpose of viewing or associating with employees who display anatomical areas designed to provide sexual stimulation or sexual gratification: human genitals, the immediate pubic region, or pubic hair; buttocks to the extent of exposing the immediate anal area; female breasts to points below the nipples; male genitals in a state of erection, even if covered with opaque clothing; all of the above anatomical areas when covered only by transparent or diaphanous clothing.
Columbus Code art. VI, § 14-223.  The parties agree that FYEA is an adult entertainment establishment under § 14-223.

[4]The section states in full:
No person shall own, manage, operate in any manner or be employed in any capacity by an adult entertainment establishment who has been convicted of or pled guilty or nolo contendere to any federal or state felony within five (5) years of applying for the permit from the chief of police necessary to do business or to be employed, nor shall any such person who has been convicted of or pled guilty or nolo contendere to any federal or state misdemeanor involving moral turpitude within two (2) years of such application be issued such a permit.
Columbus Code art. VI, § 14-227.

3

other activities involving sexual displays" unless they take place in "a regular show area with open seating." § 14-228.[5] To ensure regulatory compliance, the Ordinance further requires "adult entertainment establishments and all employees thereof . . . to apply for and obtain a permit from the chief of police certifying compliance with this . . . [Ordinance]." § 14-225. The chief of police, in turn, is provided a thirty-day time limit for granting or denying such a permit. Id.

After the passage of Ordinance 96–21, several Columbus adult businesses, including FYEA, challenged its constitutionality in state court. Sherman, Baskin, and Pennza were not parties to the state litigation. FYEA and the other businesses ultimately lost their challenge when, in early 1997, the Georgia Supreme Court upheld the Ordinance against constitutional attack. See Quetgles v. City of Columbus, 268 Ga. 619, 491 S.E.2d 778 (1997) ("Quetgles II").

Subsequent to its involvement in the state litigation, FYEA in February 1998 submitted its tax return to the City's Revenue Department as part of the renewal process for its business license. The Revenue Department notified FYEA that it

_____

[5]The section states in full:
No adult entertainment establishment shall allow and no employee thereof shall engage in private modeling sessions or other activities involving sexual displays in which one (1) employee is placed in a one-on-one situation with one (1) customer, and a regular show area with open seating shall be required for such sessions or displays; neither shall any adult entertainment establishment or any employee thereof allow personal physical contact or close mingling between customers and employees.
Columbus Code art. VI, § 14-228.

could not renew the license because FYEA had not filed its current adult entertainment permit with its tax return. FYEA then applied for an adult entertainment permit with the City's Police Department. Despite receiving a letter from Sergeant Rick Stinson stating that FYEA was approved for an adult entertainment permit, FYEA never received an actual permit, nor did it receive a business license that would have allowed it to continue offering adult entertainment.

The parties dispute why FYEA failed to obtain a permit or a renewed business license. The City alleges that FYEA never received its permit because it failed to follow the procedural steps for obtaining one, including picking up the adult entertainment permit from the Police Department and having a representative photographed. The City also contends that an undercover police operation led to the conclusion that FYEA was not in compliance with the Ordinance, even though FYEA counters that upon losing its challenge in state court, it had made the necessary changes in its operational format and in the physical layout of its building — such as by removing the doors on all of its modeling rooms — to comport with the Ordinance's provisions.

FYEA asserts that the City, through its Police Department, has unfettered discretion to pick and choose who receives an adult entertainment permit and that,

5

as a result, Sergeant Stinson arbitrarily has changed the standards for what constitutes a forbidden "private modeling session" under § 14-228 of the Ordinance whenever he sees fit, thereby preventing FYEA from obtaining a permit or business license. Indeed, FYEA argues, Stinson has granted a permit to another adult entertainment establishment in Columbus with a physical layout similar to FYEA. Stinson has even changed the definition of what constitutes the actual permit itself, FYEA contends, on several occasions during this litigation.

In any event, after FYEA failed to obtain a permit or business license, FYEA, Sherman, Baskin, and Pennza[6] (collectively, "the FYEA Appellants") brought this action pursuant to 42 U.S.C. § 1983. They commenced the action in April 1998 in the Middle District of Georgia against the City, the City Council of Columbus, and other City officials. Their complaint facially challenged the entire Ordinance, but it also raised more detailed challenges to two particular sections, § 14-227 and § 14-228. Their complaint alleged violations of the due process and equal protection clauses of the United States and Georgia Constitutions, the takings and contracts clauses of the United States Constitution, the First, Fourth, and Ninth Amendments to the United States Constitution, and Article I, ¶ 5 of the Georgia

_____

[6]Sherman, Baskin, and Pennza joined the suit because they feared criminal prosecution for noncompliance with the Ordinance. In the end, Pennza and several non-party FYEA models were prosecuted for alleged Ordinance violations.

Constitution. The FYEA Appellants sought injunctive and declaratory relief, damages, and attorney's fees.[7]

On the same day they filed their complaint, the FYEA Appellants moved for a preliminary injunction, and in the interim, for a temporary restraining order ("TRO"), enjoining enforcement of the Ordinance. The City moved to dismiss the FYEA Appellants' complaint, arguing that claim and issue preclusion, the Rooker/Feldman[8] doctrine, and Younger abstention barred the FYEA Appellants' claims. The City then filed its answer, and thereafter filed a separate motion for summary judgment, which incorporated its prior arguments for dismissal and also argued that absolute legislative immunity, the absence of vicarious liability in civil rights cases, and qualified immunity barred the FYEA Appellants' claims.

On 4 May 1998, the district court held an evidentiary hearing on the FYEA Appellants' application for a TRO. The court heard arguments from the counsel of both sides, and it also heard testimony from Sergeant Stinson concerning the alleged noncompliance of FYEA with the Ordinance. At the end of the hearing, the court orally denied the FYEA Appellants' TRO motion.

---

[7]Subsequent to filing its federal lawsuit, FYEA went out of business. Consequently, the FYEA Appellants now are only pursuing a claim for monetary damages.

[8]See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923).

Up to that point, there were no criminal prosecutions pending against any of the FYEA Appellants for violations of the Ordinance. On 5 May 1998, the Columbus Police Department arrested Pennza, after the City already had filed its motion to dismiss, its answer, and its motion for summary judgment, and after the district court already had held the TRO evidentiary hearing and had ruled on that motion. As manager, Pennza was arrested for not having an adult entertainment establishment permit under §14-225 and for permitting private modeling sessions at FYEA in violation of §14-228.

Even though there were no criminal prosecutions pending until 5 May 1998 against any of the FYEA Appellants, the district court granted the City's motion to dismiss (thereby mooting the FYEA Appellants' motion for a preliminary injunction and the City's motion for summary judgment) based in part on Younger abstention principles. Specifically, the district court dismissed the FYEA Appellants' complaint on the grounds that the court "[did] not have jurisdiction to review final state court judgments and should abstain from interfering with criminal prosecutions in the state courts." For Your Eyes Alone, Inc. v. City of Columbus, R1-22-1 (July 20, 1998).

The dismissal was appealed to this court, and we affirmed in part, vacated in part, and remanded the case to district court for further proceedings. For Your

Eyes Alone, Inc. v. City of Columbus, R1-25 (October 4, 1999).  We held that the FYEA Appellants' facial challenge to the Ordinance as a whole, as well as their challenge to § 14-227 as unconstitutionally vague and overbroad, were barred by claim and issue preclusion.  We held, however, that the FYEA Appellants could proceed with their vagueness, equal protection, free speech, privacy, takings, and contract clause as-applied challenges to the City's enforcement of § 14-228 because these claims relied on facts that arose after the state court litigation had ended.  In addition, we noted that "we [were] not certain that it was appropriate for the district court to abstain as to Pennza because he was not arrested until after he filed suit in federal court," id. at 12, and we stated "that it was inappropriate for the district court to abstain from hearing For Your Eyes Alone's, Baskin's, and Sherman's claims on the basis of Columbus's prosecution of Pennza."  Id. at 13.  We concluded by noting that the district court could reconsider on remand whether abstention as to Pennza was appropriate.

After the case was remanded, the City renewed its motion for summary judgment.  In considering the motion, the district court chose to abstain from considering all four FYEA Appellants' as-applied challenges to § 14-228.  To reach this conclusion, the court first reconsidered its earlier determination that Younger abstention applied to Pennza's claims.  Erroneously concluding that

9

Pennza was arrested on 4 March 1998,[9] before the federal litigation had commenced, the district court held that Younger abstention was appropriate. Furthermore, even though we had stated that Younger abstention was not proper as to the claims of FYEA, Baskin, and Sherman, the district court nevertheless went on to hold that it should abstain from their claims under Younger based on the doctrine of "derivative abstention." See Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S. Ct. 2561 (1975); Hicks v. Miranda, 422 U.S. 332, 95 S. Ct. 2281 (1975).[10] As a consequence, the district court dismissed all four FYEA Appellants' claims as to §14-228 and granted final judgment to the City.

On appeal, the FYEA Appellants present several arguments as to why the district court erred in its decision under Younger to abstain from hearing their as-applied constitutional challenges to § 14-228. The FYEA Appellants assert that because the district court incorrectly found that Pennza was arrested prior to the commencement of this federal suit, the court's entire analysis under Younger was skewed. The FYEA Appellants' position is also that, even if abstention was proper

---

[9]The City acknowledges that Pennza was not arrested until 5 May 1998, after the commencement of the federal court litigation.

[10] Despite the fact that we already had held that the FYEA Appellants' challenge to § 14-227 was barred based on claim and issue preclusion, the district court also reconsidered this issue and upheld § 14-227 against constitutional attack based on its conclusion that the section was not void for vagueness. The FYEA Appellants have chosen not to challenge the district court's ruling with regard to § 14-227.

as to Pennza, the court erred in abstaining from FYEA, Baskin, and Sherman's claims based on the derivative abstention doctrine, given that (1) we already had addressed the issue in our prior opinion, (2) none of the three had an ongoing state proceeding pending against them, and (3) their claims for monetary damages could not be raised or addressed in Pennza's state criminal proceeding.

Younger abstention is not warranted, the FYEA Appellants further contend, because several exceptions to the doctrine apply here. See Younger 401 U.S. at 45, 53-54, 91 S. Ct. at 751, 755.[11] In the FYEA Appellants' view, Sergeant Stinson's testimony indicates that the City has acted arbitrarily and in bad faith in its enforcement of the Ordinance. The Ordinance itself, moreover, is patently unconstitutional, they argue, because it constitutes an unlawful prior restraint under the First Amendment. The FYEA Appellants also assert that there is no adequate state forum in which Pennza and the other FYEA Appellants can pursue their federal constitutional challenges, given that Pennza's de novo appeal of his state criminal conviction in Recorder's Court has been pending since 1998, an unusually

---

[11] In Younger, the Supreme Court laid down three exceptions to the abstention doctrine enunciated therein. Abstention is not warranted if (1) there is evidence of state proceedings motivated by bad faith, (2) the state law being challenged is patently unconstitutional, or (3) there is no adequate alternative state forum where the constitutional issues can be raised. Younger, 401 U.S. at 45, 53-54, 91 S. Ct. at 751, 755.

lengthy period of delay.[12]  The FYEA Appellants conclude their argument by maintaining that, even if abstention were proper as to all the parties, the district court erred in dismissing their claim for monetary damages and in granting final judgment to the City, instead of staying that claim.  See Deakins v. Monaghan, 484 U.S. 193, 202, 108 S. Ct. 523, 529 (1988) (holding that courts have "no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding").

The City responds by arguing that, although Pennza was not arrested until after the federal proceedings had been filed, the arrest still occurred "before any proceedings of substance on the merits . . . [had] taken place in the federal court," which would mean that Younger abstention still applies to Pennza's claims.  Hicks, 422 U.S. at 349, 95 S. Ct. at 2292.  The City further contends that the district court was correct in holding that abstention as to Pennza's claims requires abstention as to the other three FYEA Appellants' claims under the derivative abstention doctrine.  From the City's perspective, the four FYEA Appellants share a close employment relationship and have interests that are completely intertwined, thereby making this case a prime candidate for application of derivative abstention.

---

[12]The FYEA Appellants concede, however, that they have taken no steps to speed up the state proceedings, such as by filing a speedy trial motion.

12

See id. at 348, 95 S. Ct. at 2291.

The City's position is also that none of the exceptions to Younger apply here. First, the City argues that there is no evidence of bad faith on its part because the FYEA Appellants cannot demonstrate "that the prosecution was brought without a reasonable likelihood of obtaining a valid conviction." Redner v. Citrus County, 919 F.2d 646, 650 (11th Cir. 1990). Second, the City maintains that even if the Ordinance were facially unconstitutional, it cannot reasonably be deemed patently unconstitutional, a stringent standard that requires that the statute at issue violate the Constitution "in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54, 91 S. Ct. at 755 (internal quotations and citation omitted). Third, the City states that because Pennza is entitled to a de novo review of his arrest and conviction by the State Court, there is an adequate alternative forum for hearing the constitutional challenges raised in this case.

The City concludes its appellate brief by addressing whether the district court erred in dismissing the FYEA Appellants' claim for monetary damages. Referring to Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719, 116 S. Ct. 1712, 1722 (1996), the City contends the district court had discretion to dismiss, rather than to stay, this case because the FYEA Appellants' claim for monetary damages

13

was dependent on the FYEA Appellants' first obtaining declaratory relief that a state law was unconstitutional.

## II. DISCUSSION

As we turn to the contentions of the parties, we begin by noting that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976). "[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." Deakins, 484 U.S. at 203, 108 S. Ct. at 530 (1988) (internal quotations and citation omitted). Attentive to the principles of equity, comity, and federalism, the Supreme Court in Younger recognized an exception to this unflagging obligation. The Younger Court held that federal courts should abstain from suits aimed at restraining pending state criminal prosecutions. Younger, 401 U.S. at 41, 91 S. Ct. at 749.[13] In addressing whether such abstention is appropriate in a given case, we review the district court's

_____

[13]In subsequent cases, the Supreme Court has held that Younger abstention is sometimes applicable to restrain federal court interference with certain noncriminal state proceedings that implicate important state interests. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S. Ct. 1519 (1987); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S. Ct. 2515 (1982).

14

decision to abstain for abuse of discretion. Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000).

In arguing over whether the district court erred, the parties have raised several separate issues concerning the scope and application of Younger. All of these issues, however, are tied to the district court's decision to abstain from Pennza's claims due to the state criminal proceedings pending against him. If the district court abused its discretion in abstaining as to Pennza, the court necessarily abused its discretion in abstaining as to the other three FYEA Appellants as well since the the court, employing the derivative abstention doctrine, held that their interests were intertwined with those of Pennza. See Hicks, 422 U.S. at 348, 95 S. Ct. at 2291. Additionally, if abstention was improper regarding Pennza, we of course need not reach whether any of the exceptions to Younger apply to this case, nor need we determine whether a stay or dismissal of the FYEA Appellants' monetary damages claim constituted the correct procedure here because neither would have been appropriate. As a matter of judicial economy, then, we first address whether the district court abused its discretion in abstaining from Pennza's claims.

As we have explained, the district court erroneously concluded that Pennza was arrested on 4 March 1998, prior to the commencement of the federal court

15

litigation. In fact, as the City itself concedes, Pennza was not arrested until 5 May 1998, after the FYEA Appellants' federal suit already was underway. The district court's entire abstention analysis regarding Pennza thus was predicated on an inaccurate factual scenario. Indeed, the court, because of its mistake, did not even address Younger precedent that articulates the circumstances under which abstention can properly be invoked even when the state criminal prosecution occurs after the federal action has commenced. See, e.g., Hicks, 422 U.S. at 349, 95 S. Ct. at 2292. We have decided, however, it would not be prudent to remand this case for the district court to reconsider, with an eye towards such precedent and in light of Pennza's accurate arrest date, whether abstention is warranted. Rather we remand with instructions for the district court to exercise its jurisdiction and proceed with this case on the merits because, as we explain infra, the court would be acting outside its discretion on remand if it chose to abstain, given the actual date of Pennza's arrest.

Turning to whether abstention based on Pennza's prosecution is proper in the present case, we note that in Steffel v. Thompson, the Supreme Court held that Younger abstention is inappropriate if there is no pending state criminal prosecution of the plaintiff. 415 U.S. 452, 462, 94 S. Ct. 1209, 1217 (1974); see also Middlesex County, 457 U.S. at 432, 102 S. Ct. at 2521 (indicating that

16

Younger abstention applies only if (1) there are pending state proceedings at the time of the federal action, (2) the proceedings implicate important state interests, and (3) the proceedings provide an adequate opportunity for raising federal constitutional questions).  In the absence of a pending prosecution, the principles that provided the rationale for abstention — equity, comity, and federalism — "have little force."  Steffel, 415 U.S. at 462, 94 S. Ct. at 1217 (internal quotations and citation omitted).  The Steffel Court went on to explain:

> Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head.  When federal claims are premised on 42 U.S.C. § 1983 . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.  But exhaustion of state remedies is precisely what would be required if . . . federal . . . relief were unavailable in a case where no state prosecution had been commenced.

Id. at 472-73, 94 S. Ct. at 1222 (internal citations omitted).   In so ruling, the Supreme Court ensured that "Our Federalism" "does not mean blind deference to 'States' Rights,'" but instead a "system in which there is sensitivity to the legitimate interests of both State and National Governments."  Younger, 401 U.S. at 44, 91 S. Ct. at 750.

Subsequent to Steffel, the Supreme Court elaborated on what constitutes a "pending" state criminal prosecution.  For Younger abstention purposes, the Supreme Court has held that the determination of whether a prosecution is pending

17

is not made based on the respective commencement dates of the state and federal actions. Instead, the Court has ruled that federal courts are to abstain if the state criminal prosecution commenced "before any proceedings of substance on the merits have taken place in the federal court," Hicks, 422 U.S. at 349, 95 S. Ct. at 2292, or if "the federal litigation [is] in an embryonic stage and no contested matter [has] been decided," Doran, 422 U.S. at 929, 95 S. Ct. at 2566. The state prosecution therefore need not predate the federal action for Younger abstention to apply.

Conversely, if there have been proceedings of substance and the federal litigation thus has moved beyond the embryonic stage before the state action commences, the Supreme Court has made it clear that federal courts do not have the discretion to abstain from exercising jurisdiction. For example, the Court has ruled that issuance of a preliminary injunction by a federal court constitutes a proceeding of substance on the merits such that the suit is no longer in its embryonic stage, thereby rendering Younger abstention inappropriate. See Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 238, 104 S. Ct. 2321, 2328 (1984); Doran, 422 U.S. at 930, 95 S. Ct. at 2567. Other federal courts, in turn, have decided that the denial of a preliminary injunction also can constitute a proceeding of substance, when coupled with a thorough evidentiary hearing. See, e.g.,

18

Adultworld Bookstore v. City of Fresno, 758 F.2d 1348, 1350-51 (9th Cir. 1985).

In light of this case law, we conclude that the FYEA Appellants' lawsuit in federal court, by the time the City initiated its prosecution of Pennza, had progressed beyond the point at which Younger abstention could properly be invoked. When the City arrested Pennza on 5 May 1998, the City already had filed a motion to dismiss the FYEA Appellants' federal case. The City already had filed its answer. The City already had filed a separate motion for summary judgment. The district court, furthermore, already had held a thorough evidentiary hearing concerning the FYEA Appellants' TRO motion. The court, before ruling on the TRO issue in the City's favor, heard testimony from Sergeant Stinson concerning the alleged noncompliance of FYEA with the Ordinance, and the court heard arguments from counsel of both sides. It was only after all of these proceedings had occurred that the City finally chose to arrest Pennza. Under these circumstances, we have no trouble concluding that Pennza's arrest occurred after proceedings of substance on the merits had taken place in federal court under Hicks, 422 U.S. at 349, 95 S. Ct. at 2292, and after the case had moved beyond the embryonic stage and a contested matter had been decided under Doran, 422 U.S. at 929, 95 S. Ct. at 2566, thus making Younger abstention inappropriate.

We of course recognize that the Supreme Court has indicated that the mere

denial of a TRO by the district court, without more, does not constitute a proceeding of substance that renders Younger abstention improper when the state prosecution is initiated after the denial. See Hicks, 422 U.S. at 338, 95 S. Ct. at 2286; Doran, 422 U.S. at 925, 95 S. Ct. at 2564. It is true that in the present case, the district court denied the FYEA Appellants' TRO motion. But beyond this rudimentary similarity, the procedural facts of this case and those of Hicks and Doran are completely divergent.

In Hicks, state criminal proceedings commenced one day after service of the federal complaint. 422 U.S. at 349, 95 S. Ct. at 2292. The state prosecution therefore was instituted even before the state had answered the federal complaint, as well as before any proceedings whatsoever were conducted before the three-judge court convened for that case. Id. at 350, 95 S. Ct. at 2292. In addition, prior to filing of the federal complaint, films of the plaintiffs already had been deemed obscene and seizable in a proceeding before the state superior court, and the plaintiffs had made an appearance at the hearing and were given an opportunity to participate therein. Id. at 335-36, 95 S. Ct. at 2285. Similarly, in Doran, the state criminal prosecution was commenced only one day after the filing of the federal complaint. 422 U.S. at 925, 95 S. Ct. at 2564. The plaintiffs' TRO motion had been denied instanter by the district court on the same day the federal complaint

20

was filed.  Id.

In contrast to Hicks and Doran, the City's criminal prosecution of Pennza was not initiated in virtual unison with the FYEA Appellants' filing their federal complaint.  Unlike in those two cases, the City commenced Pennza's prosecution only after it had begun actively litigating its position in federal court; by the time the City commenced the prosecution, the City had filed its answer, and the City had moved on various grounds for dismissal of the complaint and for summary judgment.  In addition, the district court did not deny the FYEA Appellants' TRO motion instanter or without a hearing.  Nor was the district court's TRO decision based on an ex parte hearing under Federal Rule of Civil Procedure 65(b) without the benefit of the City having notice or making an appearance.  Rather, the district court rendered its TRO decision only after conducting an evidentiary hearing at which Sergeant Stinson testified and at which the counsel of both sides argued for their respective positions.

The foregoing procedural facts show that the present case is not a replay of Hicks and Doran because all three involve the denial of a TRO motion.  The lack of any hearings whatsoever in Hicks and Doran prior to when the state prosecutions at issue commenced — combined with the stark fact that the states, having filed no pleadings, had not begun actively litigating the federal case at the

21

time the prosecutions were initiated — places them in a separate category from this case. We therefore are confident that the decisions of Hicks and Doran are fully consistent with (and indeed buttress) our conclusion here.

Our decision that Younger abstention is unwarranted in the present case is colored by the cautious approach we have chosen to take in interpreting the scope of Hicks, given its possible effect on the federal jurisdictional scheme. On the one hand, the requirement enunciated in Hicks — a federal court must abstain if a state action is filed before proceedings of substance on the merits have occurred — ensures that the Younger doctrine neither is trivialized nor made formalistic by permitting a party to obtain federal relief merely by beating the state to the courthouse. Hicks, 422 U.S. at 350, 95 S. Ct. at 2292.

On the other hand, if we define too narrowly what constitutes proceedings of substance on the merits, we risk "vest[ing] the district attorney — not the aggrieved citizen — with the power to choose the forum, and, indeed, the nature of the proceeding in which the federal constitutional claim [will] be litigated." Owen M. Fiss, Dombrowski, 86 Yale L.J. 1103, 1135 (1977); see also Erwin Chemerinsky, Federal Jurisdiction § 13.3, at 788 (3d ed. 1999). Indeed, we would risk creating an expansive "*reverse removal power*" in that state prosecutors, in effect, would have broad discretion to remove federal civil rights actions to state

criminal court on a routine basis, even after the plaintiff had invested precious time and resources to bringing the federal litigation. Fiss, supra, at 1136. Consequently, while Hicks teaches us to refrain from focusing disproportionately on the respective commencement dates of the state and federal actions in determining whether Younger abstention applies, we must, at the same time, remain circumspect about interpreting Hicks in a manner that gives state officials expansive leeway to override a plaintiff's choice of whether to litigate in a federal or state forum. Our decision here is an attempt to strike this balance.

Our decision also is marked by concern over the costs of abstention in a suit where the plaintiff brings a facial or as-applied challenge to a state statute on First Amendment free speech grounds. Uncertainty as to the constitutionality of the statute at issue, or as to the conduct of the state agents implementing the statute, can in itself chill future speech. This uncertainty can be seen as one of the costs of Younger abstention, given that the doctrine may delay resolution of the First Amendment issue. These costs are compounded the more the plaintiff (and the court) invest time and resources in the federal litigation, only to have the suit remitted to a newly-initiated criminal proceeding in state court, where the First Amendment claims must in effect be relitigated. It is true that First Amendment concerns do not, in themselves, provide a federal court with justification for

23

interfering with a pending state criminal proceeding. <u>Younger</u>, 401 U.S. at 51, 91 S. Ct. at 754; <u>Butler v. Alabama Judicial Inquiry Comm'n</u>, 245 F.3d 1257, 1265 (11th Cir. 2001). But that proposition, of course, does not preclude our taking into account, in the First Amendment context, the costs of duplication and delay caused by <u>Younger</u> as we calibrate how broadly or narrowly to define proceedings of substance on the merits under <u>Hicks</u>. We have tried to be sensitive to these costs in the present case, where the FYEA Appellants have yet to have their as-applied constitutional challenges addressed on the merits even though the contested actions of the City occurred in 1998, and where the City chose to initiate criminal proceedings only after it had filed its answer as well as several other pleadings, and only after the district court had held a thorough TRO evidentiary hearing and had ruled on that issue.

### III.  CONCLUSION

This case involves the appeal of a final judgment in which the district court dismissed the FYEA Appellants' as-applied constitutional challenges to § 14-228 of the Adult Entertainment Code enacted by the City of Columbus. Erroneously concluding that the state criminal proceedings against Appellant Pennza were initiated prior to the commencement of the federal litigation, the court dismissed all four FYEA Appellants' claims with regard to § 14-228 based on <u>Younger</u>

24

abstention.  As we have explained, Pennza's state prosecution actually commenced subsequent to the City having filed its motion to dismiss, its answer, and its motion for summary judgment.  It also commenced subsequent to the district court having ruled on the FYEA Appellants' TRO motion, which had been preceded by a thorough evidentiary hearing.

Based on the corrected procedural time line, we have decided that a remand for reconsideration is not sufficient.  Rather we have concluded that the district court does not have the discretion on remand to abstain under Younger because, under the corrected facts, Pennza's state prosecution commenced after proceedings of substance on the merits had occurred in the federal litigation under Hicks, 422 U.S. at 349, 95 S. Ct. at 2292, and after the federal case had moved beyond the embryonic stage and the district court had ruled on a contested matter under Doran, 422 U.S. at 929, 95 S. Ct. at 2566.  Pennza's challenges to the City's enforcement of § 14-228 thus are not foreclosed by the Younger abstention doctrine, and neither are the challenges of the other three FYEA Appellants, where the court's decision to abstain was predicated on Pennza's case.  Accordingly, we REVERSE the judgment of dismissal with regard to the FYEA Appellants' as-applied challenges to § 14-228 of the Adult Entertainment Code, and we REMAND for further proceedings consistent with this opinion.