**WAL–MART STORES, INC., Wal–Mart Puerto Rico, Inc., Supermercados Amigo, Inc., Plaintiffs,**

**v.**

**Anabelle RODRIGUEZ, in her Personal and Official capacity as Secretary of Justice of the Commonwealth of Puerto Rico, Defendant.**

**No. CIV.02–2778 PG.**

United States District Court, D. Puerto Rico.

Dec. 16, 2002.

Ruben T. Nigaglioni, Raul M. Arias–Marxuach, Veronica Ferraiuoli–Hornedo, McConnell Valdes, San Juan, PR, for Wal–Mart Stores, Inc, Wal–Mart Puerto Rico, Inc., Supermercados Amigo, Inc., plaintiffs.

Carlos Del–Valle–Cruz, Department of Justice, Federal Litigation Division, San Juan, PR, for Anabelle Rodriguez, Anabelle Rodriguez, in her Personal and Official Capacity as Secretary of Justice of the Commonwealth of Puerto Rico, defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### INTRODUCTION

Following oral arguments on Thursday, December 12, 2002, this Court now issues this Opinion and Order wherein it sets forth the facts and conclusions of law upon which we rely for our denial of Defendant's Motion to Dismiss.[1] There was before this Court a "Motion to Dismiss for Lack of Jurisdiction" (Docket No. 15) filed by Defendant, Anabelle Rodríguez, Secretary of Justice of the Commonwealth of Puerto Rico ("Defendant"), in the early evening of Wednesday, December 11, 2002. On that same day, Defendant also filed an "Opposition to Preliminary Injunction for Failure to State a Legitimate Claim" (Docket No. 18) and a "Motion in Opposition to Request for Issuance of Order to Show Cause why Defendant and Her Attorney Should Not Be Found in Contempt and Further Relief" (Docket No. 17). While the contempt matter has been held in abeyance until the conclusion of the evidentiary hearing, the motion opposing the preliminary injunction also requests the dismissal of Plaintiffs' claims pursuant to FED.R.CIV.P. 12(b)(6). After hearing brief arguments on the request for dismissal, the Court denied it finding that Plaintiffs had stated a claim in their verified complaint for which relief could be granted. The arguments made in the motion in opposition to issuance of preliminary injunctive relief (Docket No. 18) are nevertheless taken under advisement while the hearing takes place and will be revisited by this Court in deciding whether to grant a preliminary injunction.

### BACKGROUND

For the purposes of this Opinion and Order, in which we address precursory issues that were argued to this Court before the evidentiary hearing on the request for a preliminary injunction began, we es-

---

1. Even though the hearing on the issue that will be discussed herein has concluded, as of the date of issuance of this Opinion and Order, the preliminary injunction hearing is still in progress.

sentially limit our findings of fact to the procedural developments of this case.

On the morning hours of Thursday, December 5, 2002, the merger between Plaintiffs Wal-Mart Stores, Inc., Wal-Mart Puerto Rico, Inc. ("Wal-Mart") and Supermercados Amigo, Inc. ("Amigo") was consummated. That afternoon, on or around 3:00 p.m., Defendant issued a press release and held a press conference in which she publicly announced that she would be filing a lawsuit against the parties to the merger. The press release states that a lawsuit will be filed "within the next hours." (*See* Ex. A., Docket No. 1 at 1). Yet it was not filed until 2:46 p.m. the next day. No doubt is left in her press release to the effect that Defendant would be filing the state lawsuit and moreover, taking all actions within her ministerial duty, as a result of Plaintiffs' failure to submit to the guaranties she required them to consent to when she participated in the merger negotiations. (*See* Ex. A, Docket No. 1 at 2).

At 8:43 a.m. on Friday, December 6, 2002, Plaintiffs filed in this Court a Verified Complaint (Docket No. 1) and an "Urgent Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support Thereof" (Docket No. 2). The complaint in this case is premised on Section 1983 violations of Plaintiffs' civil rights to equal protection of the laws and due process as protected by the Fifth and Fourteenth Amendment to the Constitution of the United States of America, and also rights deriving from the Commerce Clause of the U.S. Constitution. *See* 42 U.S.C. § 1983; U.S. CONST. art. 1, § 8. Defendant's retaliatory imposition of certain controversial conditions on Plaintiffs, and her allusions to violations of local antitrust laws as a result of this particular transaction suggest equal protection and due process violations, as well as an abuse

of the powers granted to her under the Puerto Rico Anti-Monopoly Act, Law 77 of June 25, 1964, codified at 10 P.R. LAWS ANN. § 257 *et seq.*

Soon after the Court was in receipt of the Verified Complaint, the parties were convened for a hearing on the request for a TRO to be held at 2:00 p.m. on Friday, December 6, 2002. Attorney for Plaintiffs, Ruben T. Nigaglioni, notified Defendant of the hearing at approximately 12:40 p.m. (*See* Docket No. 7, Verification in Support of Request of Order to Show Cause Pursuant to 28 U.S.C. § 1746, at ¶ 1.c.) The meeting began between 2:00 p.m. and 2:10 p.m. and lasted less than half an hour. After the parties presented their arguments to the Court, the undersigned verbally told the parties that the requested TRO was granted and in their presence, at 2:30 p.m., the undersigned signed a TRO (Docket No. 5). Subsequently, at 3:00 p.m., this Court issued another Order setting out in more detail the specifics of the restraining order (Docket No. 4). A preliminary injunction hearing was set for December 16, 2002 at 9:30 a.m.

Shortly before the meeting came to an end, counsel for Defendant, Carlos A. Del Valle Cruz, asked the Court what would happen if Defendant was simultaneously filing her lawsuit in state court. The Court responded that in accordance with the TRO issued she would have to discontinue her pursuit of that action and could not serve the Plaintiffs in this lawsuit, who of course would be Defendants in the state action. Both written orders issued were Received and Filed by the Clerk of the Court at 3:15 p.m. on Friday, December 6, 2002. Defendant alleges she received the two orders by facsimile at 3:46 p.m. (Docket No. 6 at ¶ 2). At 5:58 p.m. that same day, Defendant filed an "Informative Motion" (Docket No. 6), wherein she notified this Court that she had in fact filed her

action in state court at 2:36 p.m. and that it was her understanding that at that time, the TRO had not been issued nor notified to her by this Court. At 3:45 p.m. that same Friday afternoon, Judge Milagros Rivera Guardarrama of the Court of First Instance, San Juan Part, of the Commonwealth of Puerto Rico, had issued a preliminary injunction *ex parte* forbidding Plaintiffs in this case from putting into effect or consummating any transaction or contract that would operate to implement the merger. Wal–Mart, Amigo, and third party Supermercados Máximo, Inc., were ordered to proceed operations of their businesses independent from each other as if the merger deal had not closed on December 5, 2002. Defendant filed a copy of this Court's TRO with the state court at 4:34 p.m.

On Monday, December 9, 2002 the hearing scheduled for December 16 was reset to an earlier date, December 12, 2002, since this Court disposed of the criminal cases that were on its calendar for the week. (Docket No. 8). The hearing on the motion to dismiss pursuant to the *Younger* abstention doctrine began on or about 9:25 a.m. on Thursday, December 12, 2002 and lasted for approximately and hour and half. After hearing arguments from both sides, this Court rejected Defendant's request for abstention in this case.

### ANALYSIS/DISCUSSION

■ Defendant submits to this Court a request for dismissal pursuant to Fed. R.Civ.P. 12(b)(1) for lack of jurisdiction. Her main argument in support of such request is the *Younger* abstention doctrine which, as it was originally set out by the United States Supreme Court in 1971, precludes federal courts from exercising jurisdiction over suits aimed at restraining pending state criminal actions. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The nature of the doctrine itself reveals that the form of Defendant's request was mistakenly articulated and argued. The abstention doctrines do not arise from a lack of jurisdiction in the federal courts, but are rather premised on notions of comity and federalism. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *see also Columbia Basin Apartment Ass'n v. City of Pasco,* 268 F.3d 791, 799–800 (9th Cir.2001); *Weekly v. Morrow,* 204 F.3d 613, 614–15 (5th Cir.2000). The *Younger* abstention doctrine cannot form the basis for the proposition that a court lacks jurisdiction. It can only be used to request that a court abstains from exercising such jurisdiction.

■ Therefore, we first proceed to establish our jurisdiction over Plaintiffs' claims. An action brought pursuant to "42 U.S.C. § 1983 charging denial of constitutional rights by a state agency may not be dismissed for lack of jurisdiction unless it appears that the claim is patently frivolous or wholly insubstantial." *Giulini v. Blessing,* 654 F.2d 189, 192 (2nd Cir.1981); *see also Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The test for jurisdiction purposes is whether the "complaint on its face, without resort to extraneous matter, is so plainly insubstantial as to be devoid of any merits and thus not presenting any issue worthy of adjudication." *Giulini,* 654 F.2d at 192.

Pursuant to this standard, the jurisdiction this Court has over Plaintiffs claims is unquestionable. In fact, nothing in Defendant's Motion to Dismiss persuades us to find that under this particular standard, this Court lacks jurisdiction over Plaintiffs'

civil rights claims. However the issue, as it should have been presented to this Court, is whether we should abstain from exercising such jurisdiction pursuant to the *Younger* abstention doctrine.

■ We begin, as counsel for Plaintiffs did in arguing the inapplicability of the *Younger* doctrine in this case, by noting that this Court, as a court of the United States, is "bound to proceed to judgment and afford redress to suitors" before us in every case to which our jurisdiction extends. *New Orleans Public Serv., Inc. (NOPSI) v. Council of City of New Orleans,* 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)(quoting *Chicot County v. Sherwood,* 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893)). We cannot "abdicate [our][ ] authority or duty in any case in favor of another jurisdiction." *Id.* Neither can we deny Plaintiffs the right to choose to be before this Court when the choice is there. *Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909). Even though the United States Supreme Court has held that in some cases the withholding of authorized equitable relief is appropriate because of the undue interference with state proceedings, it is well established that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Ford Motor Co. v. Meredith Motor Co., Inc.,* 257 F.3d 67, 71 (1st Cir.2001); *see also Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Pustell v. Lynn Pub. Schs.,* 18 F.3d 50, 53 (1st Cir.1994); *Guiney v. Roache,* 833 F.2d 1079, 1081 (1st Cir.1987); *Santasucci v. Gallen,* 607 F.2d 527, 528 (1st Cir.1979).

*Younger* is one of several abstention doctrines that have developed as a result of the United States Supreme Court's recognition of policies that are activated under certain circumstances, where the role of federal courts vis-à-vis state institutions requires that they forgo the exercise of their jurisdiction and refrain from interference in state proceedings. The application of the doctrine has evolved to include certain civil actions and administrative adjudications within its ambit. *NOPSI,* 491 U.S. at 367–68, 109 S.Ct. 2506; *see also Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)(*Younger* abstention is sometimes applicable to restrain federal court interference with certain noncriminal state proceedings that implicate important state interests). Nevertheless, the Supreme Court in *NOPSI* found that "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." 491 U.S. at 368, 109 S.Ct. 2506. Neither is abstention required in all cases that do not fall within one of the exceptions to the doctrine. *Id.; see also* exceptions *infra* p. 8. In fact, "such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." [2] *Id.; see also Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236.

■ The basic analytical framework that governs *Younger* abstention was established by the United States Supreme Court in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The Court found that the *Younger* absten-

---

**2.** We note that this *exceptional* circumstances rule is distinct from the *extraordinary* circum-

stances exception to the doctrine, *infra* at 9.

tion applied only when there was (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding), that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. *Brooks v. New Hampshire Sup. Ct.*, 80 F.3d 633, 638 (1st Cir.1996)(citing *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515). Exceptions to the *Younger* abstention doctrine are cases where there has been bad faith prosecutions, *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), where the state statute is patently unconstitutional, *Trainor v. Hernández,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), where there is no available adequate state forum for a plaintiff to bring its claims, *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), where there exist other extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of bad faith and harassment, *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), or where a party waives the argument by not requesting abstention under Younger, *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). The main issue in this case with respect to abstention revolves around the first prong of the *Middlesex* framework. Therefore, we undertake to set out the relevant developments of that particular prong.

In *Steffel v. Thompson,* the Supreme Court found that where there was no state criminal prosecution *pending* at the time the federal action was instituted, *Younger* abstention was inappropriate. 415 U.S. 452, 462, 94 S.Ct. 1209 (1974). In *Hicks v. Miranda* the Supreme Court further explained that federal courts were to abstain if the state criminal prosecution commenced before institution of the federal action *or* "before any legal proceedings of substance on the merits have taken place in the federal court." 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). A few days after issuance of the *Hicks* decision, the Supreme Court added that if a "federal litigation [is] in an embryonic stage and no contested matter [has] been decided," *Younger* abstention could apply. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

The ongoing state proceeding requirement *per se* is not applicable in this case because there is no question of fact as to the times when the pertinent complaints were filed in federal and state court—the federal action was filed at 8:43 a.m. and the state action was filed at 2:36 p.m., both on the same day, Friday, December 6, 2002. Indeed, following our Circuit's interpretation of the doctrine, our inquiry could end here. Together with the Supreme Court, U.S. courts of appeal and district courts have gradually but nonetheless with utmost caution, developed the scope of reach of the *Younger* doctrine. In doing so in a case decided after *Hicks,* the First Circuit established that "[i]n determining whether federal proceedings would interfere with *ongoing* state proceedings, the proper point of reference is the date plaintiff filed his federal complaint." *Bettencourt v. Board of Registration in Medicine of Com. of Massachusetts,* 904 F.2d 772, 777 (1st Cir.1990)(emphasis in original); [3] *see also Liedel v. Juvenile Court of Madison County, ALA,* 891 F.2d 1542, 1546, n. 6

---

**3.** In *Bettencourt,* the First Circuit found that allowing the federal action to continue would substantially disrupt the proceedings pending before the Supreme Judicial Court of Massachusetts reviewing a Board's decision to revoke a medical license. 904 F.2d at 777.

(11th Cir.1990)("The date of filing the federal complaint is the relevant date for purposes of determining *Younger* applicability."); *Beltran v. State of California,* 871 F.2d 777, 782 (9th Cir.1988)(same).

Still, Defendant would have the Court believe that this precedent is inapplicable because state proceedings *were* ongoing before institution of the federal action on Friday morning. She suggests that her announcement in the December 5 press release that she would bring a lawsuit against Plaintiffs "in the next few hours" predated the filing of this federal court action for abstention purposes. (*See* Docket No. 15 at 9). As Plaintiffs argued to this Court in the hearing, there is simply no support for this contention. In fact, as Plaintiffs suggested, Defendant stated she would file the lawsuit "in the next few hours," yet it was not until approximately 24 hours later that she actually did. The U.S. Supreme Court enunciated in *Steffel* that the *Younger* abstention was not applicable when at the time the federal complaint is filed, state proceedings are not pending, but are only threatened. *Steffel,* 415 U.S. at 475, 94 S.Ct. 1209. Defendant's suggestion that state proceedings were ongoing once she announced she would file a lawsuit is unpersuasive. Defendant also argues on the basis of *Hicks,* that in any case the state action did not have to predate the federal action in order for *Younger* abstention to be appropriate and that no substantive proceedings had taken place in federal court when the state lawsuit was filed.

■ When the state proceedings commence after the filing of the federal action, a court's analysis in deciding to either abstain or proceed should focus on two out of the three factors of the *Younger* abstention framework. First, abstention is proper if the state court proceedings will provide the federal plaintiffs with an adequate

opportunity to raise their constitutional challenge. *Middlesex,* 457 U.S. 423, 432, 102 S.Ct. 2515 (1982). Second, the progress of the federal action must be considered and abstention is proper if the there have been no "proceedings of substance on the merits ... in the federal court." *Hicks,* 422 U.S. 332, 349, 95 S.Ct. 2281 (1975).

■ With regards to the first factor, Plaintiffs argues that since the Supreme Court of the Commonwealth of Puerto has failed to recognize the applicability of the Commerce Clause of the United States Constitution in Puerto Rico, the lower state court will not afford them adequate protection with regards to that claim. *See R.C.A. v. Gobierno de la Capital,* 91 D.P.R. 416, 431 (1964) (holding that Congress did not extend to Puerto Rico all the dispositions of the Constitution, including the Commerce Clause). That the Commonwealth of Puerto Rico *is* subject to the constraints of the Commerce Clause, and specifically, the Dormant Commerce, has been recognized in this District and by the First Circuit. *Starlight Sugar, Inc. v. Soto,* 253 F.3d 137, 142 (1st Cir.2001); *United Egg Producers v. Department of Agriculture,* 77 F.3d 567, 569 (1st Cir. 1996); *Goya de Puerto Rico, Inc. v. Muñoz,* 95 F.Supp.2d 61, 69 (D.P.R.2000). In addition, Counsel for Defendant clearly represented to this Court that she did not intend to contest the applicability of the Commerce Clause to the Commonwealth of Puerto Rico in her state lawsuit.

■ The more debatable issue which pertains to the second factor upon which we must focus is whether Defendant instituted her state action prior to federal proceedings of substance on the merits of Plaintiffs' claims, considering that issuance of the TRO in this Court took place shortly before the filing of the state court action. Defendant maintains that at 2:36 p.m, the

time when she filed her complaint in state court, the TRO issued by this Court had not been filed nor notified to her. (*See* Docket No. 15 at 10, n. 2). As previously set out as background, the TRO was *issued* at 2:30 p.m. and supplemented by another order *issued* at 3:00 p.m. Both were *filed* at 3:15 p.m and *notified* at 3:46 p.m. Defendant's attorney however, had been verbally notified prior to 2:30 p.m. and, moreover, had been told how to proceed if Defendant was filing her lawsuit simultaneously with the TRO hearing and the issuance of the TRO. Just like Defendant asks the Court to refrain from concentrating on form over substance, Defendant likewise should recognize that a TRO was issued; that through her attorney she had knowledge of it before she commenced her state action; and that she also had knowledge of how to proceed if she was already in the process of filing her action.

Whether granting or denying injunctive relief in the form of a TRO or a preliminary injunction is a "proceeding of substance on the merits" remains unclear throughout federal circuits and district courts. The United States Supreme Court partially considered the issue in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). The plaintiffs in that case filed a complaint in federal court requesting temporary and permanent relief, and for a declaration that a state statute was unconstitutional. While there still was no state proceeding in progress, the court temporarily restrained the Hawaii Housing Authority from proceeding against plaintiff's under the statute. *Midkiff*, 467 U.S. at 238, 104 S.Ct. 2321. It also issued a preliminary injunction before state court proceedings

were initiated. *Id.* Ultimately, the Court found that "whether issuance of the February temporary restraining order was substantial federal court action or not, issuance of the June preliminary injunction certainly was." *Id.* Prior to *Midkiff*, the Supreme Court had contemplated similar circumstances in *Hicks* and *Doran*, where the state proceedings began soon after the filing of the federal complaint and the *denial* of the federal plaintiff's request for a TRO; but, according to the Court, before any substantive federal litigation on the merits. *Hicks*, 422 U.S. at 338, 95 S.Ct. 2281 (finding denial of temporary restraining order was not proceeding on the merits); *Doran*, 422 U.S. at 925, 95 S.Ct. 2561 (same); *see also Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1358, n. 5 (9th Cir.1986) (finding denial of a TRO is not considered a proceeding of substance on the merits); *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir.1987) (finding denial of a TRO without hearing is not a proceeding of substance on the merits however conducting extensive hearings on or granting a preliminary injunction could be); *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350–51 (9th Cir.1985) (finding there was a proceeding of substance on the merits when the federal court has conducted extensive hearings on a motion for a preliminary injunction; but leaving open the question of whether grant of a TRO was also a substantive proceeding on the merits).

This case is primarily distinguishable from *Hicks* because there the Supreme Court found that *denial* of a temporary restraining order was not a substantial proceeding on the merits.[4] 422 U.S. 332,

---

4. We also find it relevant that the proceedings in *Hicks* were criminal in nature while here the state action is a civil lawsuit. There are no preliminary steps to the filing of a civil

complaint as there are in a criminal proceeding, and moreover, there are strong allegations of selective and vindictive enforcement in this case. In addition, while the doors of

95 S.Ct. 2281, 45 L.Ed.2d 223. *Hicks* and *Doran* left open the possibility that granting a temporary restraining order was a proceeding of substance on the merits, and almost ten years later in *Midkiff,* the Supreme Court once again left the question unanswered. Lower courts that have examined the issue and expanded on the Supreme Court's findings, have noted that "[t]he *grant* of a TRO is somewhere in the middle; as a temporary affirmative act, it is more than a denial of a TRO, yet less than the issuance of a preliminary injunction." *Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. 646, 651 (E.D.Va.1990) (emphasis ours) (holding that granting a TRO by a magistrate judge is not a proceedings of substance on the merits; no hearing, no notice to opposing party). The Court in *Kim–Stan* distinguished a TRO from a preliminary injunction alluding to the fact that the former may be issued *ex parte* and that the opposing party may not even have "the opportunity to be heard before the TRO is issued." *Id.* While that may be the typical situation when a TRO is issued, it is not the case here. Here the TRO was not granted *ex parte and* both sides were given the opportunity to be heard prior to issuance of the order. In addition, even when a TRO has been issued *ex parte* several courts have found that granting it was a proceeding of substance on the merits. In *Graham v. Breier,* the court entered an *ex parte* temporary restraining order prior to the commencement of a state action. 418 F.Supp. 73, 77–78 (E.D.Wis.1976). The Court noted that a TRO hardly constitutes a *final determination on the merits, but nevertheless,* decided that because the movant must establish a prima facie claim to obtain such relief, *proceedings of substance on the merits,* as contemplated in *Hicks,* had tak-

en place in federal court once the TRO was signed. *Id.; see also Housworth v. Glisson,* 485 F.Supp. 29, 33 (N.D.Ga.1978) (reaching the same conclusion because plaintiffs had made a sufficient showing with respect to criteria for preliminary injunctive relief).

This Court received Plaintiffs' verified complaint on the morning of December 6, 2002 on or about 9:30 p.m. The issues raised in that complaint were carefully considered before finding it imperative to summon the parties to an emergency hearing that afternoon on Plaintiffs' request for injunctive relief. Subsequently at that hearing, the Court more fully considered the issues before it as the undersigned heard the attorney's arguments, and decided to grant the TRO. As was elaborated on in the Order issued on December 9, 2002 (Docket No. 9), the Court had to consider the merits of this case in ruling on all the elements of the four prong test for temporary or preliminary injunctive relief, and specifically, the first element which requires a court to consider a plaintiff's likelihood of success on the merits of his/her claims. *Narragansett v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). We find that during the TRO hearing that took place at 2:00 p.m. a *contested matter* was decided. That hearing together with the grant of the requested TRO was a proceeding of substance, as opposed to a final determination, on the merits that took place before Defendant filed her state court action. Therefore, because we find that the first prong of the tripartite framework of a *Younger* abstention inquiry, *supra* at 8, is not fulfilled in this case, we need not consider in depth the second and third one, nor any of the exceptions to the doctrine's

federal court remain open to a criminal defendant pursuant to the availability of habeas corpus relief, dismissal of this federal action

is permanent and limits federal review of what takes place in state court to the United States Supreme Court.

applicability.[5]

The Court has carefully considered and reluctantly applied to the facts of this case the line of cases expanding *Younger* principles to civil proceedings. As one Circuit Court has suggested, the message in many of those cases seems to be that "one who decides to violate a state law that he believes to be unconstitutional may find that he has thereby submitted himself to the jurisdiction of the state courts." *Ciotti v. County of Cook,* 712 F.2d 312, 315 (7th Cir.1983) (quoting *People of the State of Illinois v. Gen. Elec. Co.,* 683 F.2d 206, 213 (7th Cir.1982)). That is precisely what distinguishes the instant lawsuit from many other cases. At this point there are no clear and persuasive indications before this Court of violations of state law. Indeed, the Federal Trade Commission approved the merger and indicated that once Plaintiffs divested themselves of four supermarket stores, no monopolistic concerns remained. Nevertheless, with only a refusal to submit to unconstitutional conditions and without there being a voluntary and conscious decision by Plaintiffs to proceed against state law, Defendant still pretends to make Plaintiffs take their federal constitutional claims to state court when their will is clearly the contrary.

We close this discussion by reiterating our concern here with the risks involved in narrowly interpreting the Supreme Court's decision in *Hicks.* These have been articulated by the Eleventh Circuit in a recent opinion where the Court warns against vesting a district attorney with the power to choose the forum and the nature of the proceeding where federal constitutional claims will be litigated which would potentially create an expansive "reverse removal power." *For Your Eyes Alone, Inc. v. City of Columbus,* 281 F.3d 1209, 1219 (11th Cir.2002) (citing Owen W. Fiss, *Dombrowski,* 86 Yale L.J. 1103, 1135 (1977)). State officials would in essence be given the instrumental framework to bring a plaintiff's federal constitutional claims to state court. *Id.* As the Eleventh Circuit concluded,

> "while *Hicks* teaches us to refrain from focusing disproportionately on the respective commencement dates of the state and federal actions in determining whether *Younger* abstention applies, we must, at the same time, remain circumspect about interpreting *Hicks* in a manner that gives state officials expansive

---

**5.** With only a couple of benchmark examples from the U.S. Supreme Court, it is wearisome for this Court to conclusively find that there are extraordinary circumstances in this case that justify application of this exception to *Younger* abstention. We recognize the Supreme Court has found there must be an "extraordinary pressing need for immediate federal equitable relief" and not only "a highly unusual factual situation." *Kugler,* 421 U.S. at 124–25, 95 S.Ct. 1524. But in one of a handful of cases where the Supreme Court has discussed the exception, it found that when an administrative agency "was incompetent by reason of bias to adjudicate the issues pending before it," extraordinary circumstances could be found. *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). In *Gibson* the Court found abstention was appropriate due to the unconstitutional establishment of a reviewing board. Similarly in this case we have found that the conditions which Defendant attempted to get Plaintiffs to agree to were unconstitutional. The Court has found in its previous Opinion and Orders (Docket Nos. 4 & 9) that it is likely that Plaintiffs refusal to an unabridged submission to those conditions incited Defendant's state lawsuit. Coming from a high government official who has sufficient power and authority to coerce Plaintiffs into submitting to her unconstitutional conditions and given that we have found it is likely that her authority and capacity was being inappropriately employed, we find it likely that the case before us would fall within the extraordinary circumstances exception.

leeway to override a plaintiff's choice of whether to litigate in state or federal forum."

281 F.3d at 1219.

We find that these risks are specifically evident in this case in which there has been no representations made to the Court or allegations presented before it that explain the manifest lack of a rational relation between Defendant's statement to the press in her December 5, 2002 press release, and the allegations she now makes in state court.

### CONCLUSION

In light of the foregoing, we find: 1) that since the federal action was commenced prior to the state action, there were no ongoing state proceedings when the federal complaint was filed; 2) that the announcement that a lawsuit would be filed did not suffice to initiate state proceedings under the *Younger* abstention framework; and 3) that holding a TRO hearing and issuing a TRO on the basis of such hearing constituted a proceedings of substance on the merits of Plaintiffs' claims. Ultimately, the facts of this case call for strict caution in the surrender of a federal court's jurisdiction over constitutional claims given the implications that have been raised herein of abuse by state officials of both their powers and duties under state laws. The Court therefore finds that *Younger* abstention is not warranted and **DENIES** Defendant's Motion to Dismiss.

**SO ORDERED.**